UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICAH CROFFORD BROWN, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 3:19-CV-2301-L-BN |
| § | |
| LORIE DAVIS, Director, Texas Department § | |
| of Criminal Justice, Correctional Institutions § | CASE INVOLVING THE DEATH |
| Division, § | PENALTY |
| § | |
| Respondent. § | |

**PETITIONER'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, Micah Crofford Brown, by and through undersigned counsel, respectfully moves this Court to extend the time in which to file his Petition for Writ of Habeas Corpus, which, pursuant to this Court's April 17, 2020 Order, is presently due on or before July 1, 2020. ECF No. 24. Mr. Brown respectfully requests the Court to extend the time to file his petition to September 11, 2020, for two reasons: 1) a global pandemic makes the current filing deadline impracticable; and 2) September 11, 2020, is the date on which the 1-year limitations period set by Congress expires. Respondent does not oppose this motion. Mr. Brown submits the following as good cause for granting his request.

## I. PROCEDURAL HISTORY

In May 2013, Mr. Brown was convicted of capital murder by a jury in Hunt County, Texas. In June 2013, the trial court imposed a sentence of death. Mr. Brown properly filed an application for habeas corpus relief in state court in 2014, while his direct appeal was pending. The Texas Court of Criminal Appeals (CCA) affirmed Mr. Brown's conviction and sentence on direct appeal in

September 2015. *Brown v. State*, No. AP-77,019, 2015 WL 54537655 (Tex. Crim. App. Sept. 16, 2015). On September 11, 2019, the CCA denied Mr. Brown's habeas application. *Ex parte Micah Crofford Brown*, WR-85,341-01, 2019 WL 4317041 (Tex. Crim. App. Sept. 11, 2019).

On October 23, 2019, a magistrate judge appointed undersigned counsel as counsel of record for Mr. Brown. ECF No. 9. The magistrate judge also ordered that Mr. Brown shall file his federal habeas corpus petition on or before May 1, 2020.[1] *Id.* at 2.

Mr. Brown objected to the magistrate judge's order directing him to file his petition prior to the limitations period established by Congress. ECF No. 14. The Court overruled Mr. Brown's objections, but stated that he may, "at any time . . . file an appropriate motion" seeking a continuance of the pleading deadline set by the magistrate judge. ECF No. 20 at 1.

On March 23, 2020, Mr. Brown moved to have the filing deadline reset to the 1-year date, September 11, 2020, or alternatively, for a 60-day extension of the May 1, 2020 deadline. ECF No. 22. The Court granted Mr. Brown's motion in part, permitting a 60-day extension. ECF No. 24. In its Order, the Court again reminded Mr. Brown that if he "wishes to seek a continuance of the pleading deadline set by the magistrate judge, he may file an appropriate motion." *Id.* at 2. This unopposed motion follows.

## II. REASONS FOR GRANTING THE MOTION

### A. A GLOBAL PANDEMIC MAKES THE CURRENT DEADLINE IMPRACTICABLE AND UNREASONABLE.

Despite the exercise of due diligence, Mr. Brown will be unable to comply with the court-imposed deadline due to the restrictions imposed by COVID-19.[2]

---

[1] The initial May 1, 2020 filing deadline was 133 days before expiration of the 1-year limitations period set by Congress for filing such a petition. *See* 28 U.S.C. § 2244(d).
[2] The current worldwide outbreak of novel coronavirus, or COVID-19, was officially designated as a pandemic by the World Health Organization on March 11, 2020. COVID-19 is a highly contagious, sometimes fatal, respiratory illness. The virus is transmitted between people who are in

The State of Texas remains under both the state of disaster Governor Abbott declared on March 13, 2020, and the public health disaster declared on March 19, 2020, by John W. Hellerstedt, M.D., commissioner of the Texas Department of State Health Services, on the grounds that COVID-19 "has created an immediate threat, poses a high risk of death to a large number of people, and creates a substantial risk of public exposure because of the disease's method of transmission and evidence that there is community spread in Texas." https://www.dshs.state.tx.us/coronavirus/execorders.aspx.[3] On March 19, 2020, the Governor issued executive orders concerning COVID-19 directing the public to engage in social distancing and behave in ways to mitigate the spread of the virus. *Governor Abbott Issues Executive Orders In Accordance With Federal Guidelines To Mitigate Spread Of COVID-19 In Texas* (Mar. 19, 2020), https://gov.texas.gov/news/post/governor-ab-bott-issues-executive-orders-in-accordance-with-federal-guidelines-to-mitigate-spread-of-covid-19-in-texas.[4]

The city of Austin, and Travis County, Texas, where Mr. Brown's legal team resides, have been under stay-at-home orders since March 24, 2020. The orders require residents to stay at home except for essential activities and require fabric face coverings when in public.[5] Mr. Brown's legal team has been working remotely since mid-March.

---

close contact with one another, through respiratory droplets when an infected person coughs, sneezes, or even just speaks, and possibly by touching a surface or object that has the virus on it and then touching their own mouth, nose, or eyes. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited June 8, 2020). A person may not show symptoms for fourteen days after exposure, and may thus contribute to asymptomatic spread of the disease. *CDC: Symptoms of Coronavirus*, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.

[3] This declaration was updated on May 15, 2020, as COVID-19 "continues to present an immediate threat. . ." https://www.dshs.state.tx.us/coronavirus/execorders.aspx.

[4] There have been numerous addendums to these orders, but the provisions encouraging social distancing and otherwise working to slow the spread of the virus remain in place.

[5] http://austintexas.gov/department/covid-19-information/stay-home-order; https://www.traviscountytx.gov/news/2020/1945-novel-coronavirus-covid-19-information.

On March 13, 2020, the President of the United States declared a national state of emergency in response to the COVID-19 outbreak.[6] While the CDC does not generally issue advisories or restrictions for travel within the United States,[7] experts have stated definitively that travel presents a risk of catching and spreading the disease.[8] Travel is especially dangerous for those who are at high risk for needing hospitalization in the event of infection.[9]

Notwithstanding the State's efforts to mitigate community spread of COVID-19, the number of new infections has been climbing steadily in Texas over the past few weeks.[10] As of June 9, 2020, Texas has reported 77,630 cases of COVID-19; and 1,867 have died.[11] Both newly reported cases and newly reported deaths remain high: 12,352 new cases and 173 new deaths in the first 8 days of June.[12] Perhaps more telling are the current record-high number of hospitalizations in Texas.[13]

The circumstances related to the pandemic have presented an escalating series of obstacles that are impeding counsel's ability to represent Mr. Brown and prepare his petition. This is especially

---

[6] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/
[7] https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html
[8] https://www.nytimes.com/2020/03/17/parenting/coronavirus-family-travel-advisory.html
[9] https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html; https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html
[10] https://finance.yahoo.com/news/gilead-roche-pair-drugs-trial-115714151.html; https://www.statesman.com/news/20200529/daily-coronavirus-cases-in-texas-up-again-after-low-weekend-reporting-officials-say; https://abcnews-go-com.cdn.ampproject.org/v/s/abcnews.go.com/amp/US/texas-sees-record-uptick-covid-19-cases-protests/story; https://www.cnbc.com/2020/06/08/texas-reports-a-record-high-number-of-hospitalized-coronavirus-patients-after-state-reopened-early.html
[11] https://www.nytimes.com/interactive/2020/us/texas-coronavirus-cases.html
[12] *Id.*
[13] There are currently 1,935 Covid-19 patients in hospitals across the state, topping the previous hospitalization record of 1,888 patients on May 5, according to new data from the Texas Department of State Health Services.

4

true as cases continue to increase in Texas, and there have been predictions by epidemiologists of coming waves of infection.[14]

Mr. Brown's team has been diligently working on his case and counsel has identified meritorious claims bearing on Mr. Brown's responsibility and culpability that require additional investigation beyond what can be done during the pandemic. This investigation requires both intrastate and interstate travel. Restrictions on travel and social distancing requirements have prevented Mr. Brown's counsel from completing these investigations. Moreover, because members of Mr. Brown's team, and some of the potential witnesses his team must interview, are members of high-risk groups, it would be unethical and contrary to Mr. Brown's interests to endanger them, their families, and their communities. This is especially so when the defense team may unwittingly be spreading transmission even if they themselves have no symptoms or, in the course of travel, acquire the virus from others who are asymptomatic.[15]

The Texas State Bar's Guidelines and Standards for Texas Capital Counsel (Texas Guidelines) require that the undersigned conduct a thorough and complete investigation into all aspects of the case, and not presume prior counsel performed adequately. *See* Texas Guidelines 12.2(B)(1) & (2). The ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003 ABA Guidelines) similarly require that Mr. Brown's legal team "continue an aggressive investigation into all aspects of the case." ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.15.1(E)(4), in 31 Hofstra L. Rev. 913 (2003). This investigation includes conducting interviews of relevant persons in a "culturally competent manner." Supplementary Guidelines for the Mitigation

---

[14] https://www.dallasnews.com/news/2020/06/07/experts-warned-of-a-second-wave-of-coronavirus-cases-as-reopenings-swept-texas-in-may/
[15] https://www.vox.com/2020/4/22/21230301/coronavirus-symptom-asymptomatic-carrier-spread

Function of Defense Teams in Death Penalty Cases, Guideline 5.1(C), in 36 Hofstra L. Rev. 677 (2008). The legal team "must conduct in-person, face-to-face, one-on-one interviews with the client, the client's family, and other witnesses who are familiar with the client's life, history, or family history or who would support a sentence less than death." *Id.* at 10.11(C). These requirements simply cannot be accomplished in the current environment of social-distancing, self-quarantine, and lockdown orders. In-person interviews pose a series of health and safety concerns and present significant risks for those involved. Remote technology options such as video conferencing and phone calls do not provide an adequate alternative for capital defenders, mitigation specialists, experts, or investigators.

Counsel have a duty to conduct "[e]xtensive interviews with the client to determine: the background information in the case; any potential defenses; the identity of any witnesses available for guilt - innocence, or on punishment; the names and addresses of all available family members: medical history; educational history; criminal history, etc." Guidelines & Stds. for Tex. Capital Counsel, Guideline 11.1(A)(2)(a) (St. Bar of Texas 2006). But, of course, Mr. Brown is incarcerated. Due to the pandemic and the necessity of preventing spread within the prison where Mr. Brown is held, the Texas Department of Criminal Justice cancelled all visitation on March 13, 2020. Since then, counsel have been limited to 30-minute telephone calls with Mr. Brown.[16] The extensive interviews described in the Texas Guidelines are not possible through intermittent 30-minute

---

[16] To obtain a call, counsel must provide the "[r]eason [a] phone call could not be precluded by personal visit or correspondence." Texas Department of Criminal Justice, Form I-61 *Attorney/Offender Telephone Call Application.* The application and stated reason must be approved by prison officials prior to the call. Availability is limited, phone quality is poor, and the calls are conducted in a setting that is not conducive to confidential communications. These phone calls are not an adequate substitute for an in-person attorney-client visit.

6

telephone calls each of which imposes demands on prison staff and potentially exposes Mr. Brown to infection.[17]

These external impediments reach the heart of the attorney-client relationship and the starting point and continued path of any investigation. One of counsel's most fundamental duties is "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also* 2003 ABA Guidelines § 10.5; Tex. Disciplinary R. Prof'l Conduct 1.03(a) (requiring counsel to keep clients "reasonable informed"); *see also id.* at 1.03(b) (requiring counsel to explain matters so that the client can make informed decisions about the representation). As both the Texas Guidelines, and the law of effective assistance state, consultation with Mr. Brown is essential, and constitutionally mandated, for his counsel's investigation into every aspect of the case. *See* Tex. Guideline 10.2 ("Counsel ... should engage in continuing interactive dialogue with the client concerning ... factual investigation ... legal issues ... development of a defense theory ... litigation deadlines ... relevant aspects of the client's relationship with correctional ... or other governmental agents"); Tex. Guideline 11.7(D); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005). Therefore, the ability to adequately represent Mr. Brown at this time has been severely curtailed, and in some aspects, completely shut down.

Additionally, counsel has determined that expert services are necessary to prepare the petition and fulfil counsel's duty to represent Mr. Brown. *See* Texas Guidelines 11.1(A)(3) & 11.7(F)(2). Experts have been retained and have been provided relevant documentation in order to

---

[17] To date, there have been four confirmed cases of COVID-19 among staff at the Polunsky Unit. https://txdps.maps.arcgis.com/apps/opsdashboard/index.html#/dce4d7da662945178ad5fbf3981fa35c

7

inform their opinions. However, some of these experts reside out of state and fall into high-risk groups for whom travel would be especially dangerous. At a minimum, experts will need to meet with Mr. Brown in prison in order to properly evaluate him, but the prison has foreclosed any visitation. Simply, the experts required to provide adequate representation cannot do their jobs under the current conditions created by the pandemic. Finally, post-conviction counsel must collect records and documents that may inform counsel, investigators, and experts about the alleged crimes, events used by the prosecution as aggravating evidence, and their client's life history. *See Trevino v. Thaler*, 569 U.S. 413, 423–24 (2013); *see also* Tex. Guideline 12.2(B)(1)(d)-(e). Accordingly, Mr. Brown's team has sought school, employment, prison, criminal history, mental health, medical, and family records. Tex. Guidelines 12.2(B)(4)(h) & 12.2(B)(5)(g). However, several of Mr. Brown's record requests remain pending with counties and agencies that are either already affected by the COVID-19 outbreak or are responding to the outbreak by shutting down their business, organization, or office. As a result, any response to Mr. Brown's requests may be unanswered for an indeterminable amount of time. Because capital post-conviction representation, unlike appeals, necessarily requires extra-record investigation, Mr. Brown would be irreparably harmed without additional and reasonable time.

Without additional time, Mr. Brown's counsel will be unable to adequately represent him in these proceedings without endangering themselves, potential witnesses, the larger community, or Mr. Brown's interests. Nor are they able to undertake the appropriate expert examination and consultation reasonably necessary to conduct an adequate capital habeas investigation.

## B. CONGRESS HAS DETERMINED THAT THE 1-YEAR STATUTE OF LIMITATIONS FOR FILING AN INITIAL HABEAS PETITION UNDER NORMAL CIRCUMSTANCES IS A REASONABLE PERIOD OF TIME TO COMPLETE THE FILING.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA), which included a 1-year limitations period for a petitioner to file an initial habeas application. 28 U.S.C. § 2244(d)(1). By including the 1-year statute of limitations period, Congress deemed that period as a reasonable period of time in which to complete the filing. *See Grant v. Swarthout*, 862 F.3d 914, 919 (9th Cir. 2017). Barring an unexpected external impediment which would toll the running of the limitations period, it is entirely reasonable for Mr. Brown to be permitted 1-year to file his initial petition, and entirely appropriate for this Court to allow him to do so. *See, e.g., Socop-Gonzalez v. INS,* 272 F.3d 1176, 1196 (9th Cir. 2001) (en banc) ("[A] court arguably usurps congressional authority when it tolls and then rewrites the statute of limitations by substituting its own view of how much time a plaintiff reasonably needed to file suit.").

The Supreme Court has recently endorsed this reasoning. *See SCA Hygiene Products Aktiebolag v. First Quality Baby Products,* 137 S. Ct. 954, 960, 961 (2017) (holding that altering a Congressionally-determined statute of limitations "would give judges a 'legislative-overriding' role that is beyond the Judiciary's power," *and* "'[i]f the plaintiff has done only what she is permitted to do by statute, ... the basis for barring the plaintiff seems to have disappeared.'") (quoting 1 Dan Dobbs, Law of Remedies § 2.4(4), at 108 (2d ed. 1993)).

The Supreme Court has stated that, "[t]he enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination." *Id* at 960. This rationale applies with equal force to Mr. Brown's case. Congress has determined that state prisoners are entitled to one full year from the date on which their conviction became final before

9

their federal habeas petition must be filed. 28 U.S.C. §2244(d). To require Mr. Brown to submit his petition without the benefit of the full statute-of-limitations period is contrary to Congressional intent.

Nowhere in the text of 28 U.S.C. § 2244(d) is there any requirement that a petitioner demonstrate that, "despite the exercise of due diligence on his part," ECF No. 24 at 2, he is unable to meet a shorter, court-imposed filing deadline in order to receive the entirety of the limitations period. Nor is there any requirement that a petitioner identify any new claims, claims that were not fully litigated in state court or new evidence to receive the 1-year limitations period Congress has set. *Id.*

Ultimately, counsel for Mr. Brown cannot fulfil their professional obligations to investigate the grounds for a writ of habeas corpus, or timely file one that meets prevailing professional standards of capital representation under the current deadline. *Cf. Holland v. Florida*, 560 U.S. 631 (2010) (allowing equitable tolling in the timeline to file a federal habeas petition due to "extraordinary circumstances" involving an attorney's failure to satisfy professional standards of care) (citing *Pace v. DiGuglielmo*, 544 U. S. 408, 418 (2005)); *see also Maples v. Thomas*, 565 U.S. 266 (2012) (excusing procedural default rules when petitioner was "was disarmed by extraordinary circumstances quite beyond his control").

As scientific and public health information develops that is relevant to undersigned counsel's ability to prepare and submit Mr. Brown's habeas petition, counsel will provide supplemental filings to this Court.

This request is not being made for purposes of delay.

### III. CONCLUSION

For the reasons stated above, Mr. Brown requests that his motion be granted.

DATED: June 9, 2020

Respectfully submitted,

MAUREEN FRANCO
FEDERAL PUBLIC DEFENDER

*/s/ Timothy P. Gumkowski*
TIMOTHY P. GUMKOWSKI
Assistant Federal Public Defender
Capital Habeas Unit
Texas Bar No. 24104788
Federal Defender Office
919 Congress, Suite 950
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)
Tim_gumkowski@fd.org

*Counsel for Petitioner Micah Brown*

11

## CERTIFICATE OF CONFERENCE

On June 1, 2020, undersigned counsel for Petitioner, Timothy Gumkowski, conferenced this motion with counsel for Respondent, Assistant Attorney General Erich Dryden, who stated he does not oppose the motion.

*/s/ Timothy Gumkowski*
Timothy Gumkowski

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of June, 2020, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Erich Dryden
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400 (tel.)
(512) 320-8132 (fax)
erich.dryden.oag.texas.gov

*/s/ Timothy Gumkowski*
Timothy Gumkowski