UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICAH CROFFORD BROWN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:19-cv-2301-L-BN |
| | § | |
| DIRECTOR, Texas Department of Criminal | § | |
| Justice, Correctional Institutions Division, | § | CASE INVOLVING THE DEATH |
| | § | PENALTY |
| | § | |
| Respondent. | § | |

## MOTION TO MODIFY OR SUSPEND SCHEDULING ORDER DUE TO EXTRAORDINARY CIRCUMSTANCES

Petitioner, Micah Crofford Brown, moves this Court to modify or suspend the scheduling order in this capital habeas corpus proceeding due to the effects of the COVID-19 pandemic. Alternatively, Petitioner seeks to have these federal proceedings stayed after the filing of his Petition for Writ of Habeas Corpus, to account for the ongoing impact of COVID-19.

Mr. Brown is contemporaneously filing an initial Petition for Writ of Habeas Corpus. The Petition is timely under 28 U.S.C. §§ 2244(d)(1)(A) and (d)(2), and it complies with the requirements of Rule 2 of the Rules Governing § 2254 Cases in the District Courts. However, Mr. Brown is filing under extraordinary circumstances that compelled a state-wide declaration of disaster in Texas that has been in effect since March 13, 2020, and that have prevented his counsel from completing the diligent investigation they began before the nation, state, and city-wide attempts to stem the spread of COVID-19 came into effect. Mr. Brown requests that the Court modify or suspend the scheduling order to provide him a reasonable time to amend his Petition after limitations on investigation are lifted and before the State is required to answer.

The reasons for this motion are set forth below in the brief in support.

DATED:  September 11, 2020        Respectfully submitted,

MAUREEN FRANCO
FEDERAL PUBLIC DEFENDER


*/s/ Timothy P. Gumkowski*
Timothy P. Gumkowski
Texas Bar No. 24104788
Assistant Federal Defender
Office of the Federal Public Defender
Capital Habeas Unit
919 Congress, Suite 950
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)
Tim_gumkowski@fd.org

*Counsel for Petitioner Micah Crofford Brown*

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................ 1

II.     Procedural History ...................................................................................................... 4

III.    Reasons for Granting Relief ....................................................................................... 6

      A.      Extraordinary Circumstances – COVID-19 ........................................................ 6

      B.      Limitations on Investigation ............................................................................... 8

              1.      Prevailing Professional Norms ..................................................... 9

              2.      Specific Facts of this Case .......................................................... 11

      C.      Fruits of Further Investigation are Likely ......................................................... 13

      D.      In Light of the Extraordinary Circumstances, the Current Scheduling Order is Neither Efficient Nor Equitable, and Modification or Suspension of the Order will Produce More Efficient and Equitable Results .................................... 14

IV.     Conclusion ................................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Brewer v. Davis,*
    No. 2:15-cv-00050, ECF No. 40 (N.D.Tex. May 5, 2016) ....................................... 15

*Brown v. Davis,*
    No. 1:19-cv-01796, slip op. (E.D.Cal. Aug. 27, 2020) .................................................. 8

*Brown v. State,*
    No. AP-77,019, 2017 WL 5453765 (Tex. Crim. App. Sept. 16, 2015) ...................................... 4

*Ex parte Brown,*
    No. WR-85,341-01, 2019 WL 4317041 (Sept. 11, 2019) ........................................... 4

*Cade v. Davis,*
    No. 3:17-cv-3396, ECF No. 49 (N.D.Tex. Nov. 11, 2018) ...................................... 15

*Cowan v. Davis,*
    No. 1:19-cv-00745, 2020 WL 1503423 (E.D.Cal. Mar. 30, 2020) ................................. 8

*Cowan v. Davis,*
    No. 1:19-cv-00745, 2020 WL 4698968 (E.D.Cal. Aug. 13, 2020) ............................... 8

*Fitzgerald v. Shinn,*
    No. CV-19-5219, 2020 WL 3414700 (D.Ariz. Jun. 22, 2020) ................................... 8

*Holland v. Florida,*
    560 U.S. 631 (2005) ....................................................................................... 2, 14

*Hutto v. Cain,*
    No. 3:20-CV-98, slip op. (S.D.Miss. Jun. 6, 2020) ...................................................... 8

*Nunnery v. Gittere,*
    No. 3:19-cv-00618 (D. Nev. Aug. 24, 2020), ECF No. 19....................................... 16

*Pickens v. Shoop,*
    No. 1:19-cv-558, 2020 WL 3128536 ..................................................................... 8

*Rubio v. Davis,*
    No. 1:18-cv-00088, ECF No. 18 (S.D.Tex. Sept. 4, 2019), ECF No. 26 ................................. 15

*United States v. Crusius,*
    No. EP-20-CR-0039-DCG, ECF No. 95 (Memorandum Opinion and Order)
    (W.D.Tex. Jul. 28, 2020) ..................................................................................... 8

## Statutes

18 U.S.C. § 3599 ........................................................................................................... 4

28 U.S.C. § 2244(d)(1) ............................................................................................... 4, 8

28 U.S.C. § 2244(d)(1)(A) ...................................................................................... 1, 4, 5

28 U.S.C. § 2244(d)(1)(B-D) ........................................................................................ 4

28 U.S.C. § 2244(d)(1)(D) ...................................................................................... 2, 14

28 U.S.C. § 2244(d)(2) ............................................................................................ 1, 4

## Other Authorities

ABA, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases,* 31 Hofstra L. Rev. 913 (2003) ................................................ 9, 10, 11, 12

ABA, *Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases,* 36 Hofstra L. Rev. 679 (2008) ............................................ 9, 10

Fed. R. Civ. P. 15(a)(1)(B) ...................................................................................... 3, 14

Fed. R. Civ. P. 15(a)(2) ........................................................................................... 3, 15

Fed. R. Civ. P. 15(c)(1) ........................................................................................... 2, 14

Rules Governing § 2254 Cases in the District Courts, Rule 2 ........................................ 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICAH CROFFORD BROWN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:19-cv-2301-L-BN |
| | § | |
| DIRECTOR, Texas Department of Criminal | § | |
| Justice, Correctional Institutions Division, | § | CASE INVOLVING THE DEATH |
| | § | PENALTY |
| Respondent. | § | |
| | § | |

## BRIEF IN SUPPORT OF MOTION TO MODIFY OR SUSPEND SCHEDULING ORDER DUE TO EXTRAORDINARY CIRCUMSTANCES

### I.   Introduction

Petitioner moves this Court to modify or suspend the current scheduling order, ECF No. 26, due to the effects of the COVID-19 pandemic. Contemporaneously, Mr. Brown is filing an initial Petition for Writ of Habeas Corpus ("Petition"). The Petition is timely under 28 U.S.C. §§ 2244(d)(1)(A) and (d)(2), and complies with the requirements of Rule 2 of the Rules Governing § 2254 Cases in the District Courts ("Habeas Rules"). However, Mr. Brown is filing under extraordinary circumstances that compelled a state-wide declaration of disaster that has been in effect since March 13, 2020, and that have prevented his counsel from completing the diligent investigation they began before the necessary efforts to curb the spread of COVID-19 came into effect. The limitations on investigation that were, and continue to be, necessary to fight the pandemic justify modifying the scheduling order so that the order does not produce inefficient and inequitable results that the Court could not have foreseen or intended. Specifically, Mr. Brown moves this Court to modify or suspend the scheduling order to give him a reasonable time to amend the Petition after

limitations on investigation are lifted and before the State is required to answer. The disaster declaration was issued and the limitations took effect on March 13, 2020. This was 182 days before September 11, 2020, the expiration of the one-year period that Congress set as the time for filing a federal habeas petition under normal circumstances. Under these circumstance, that time would seem reasonable.

Alternatively, Mr. Brown seeks a stay of these proceedings to account for the ongoing effects of COVID-19.

Restrictions on travel and interpersonal contact that are necessary to slow the spread of COVID-19 have prevented Mr. Brown's counsel from fulfilling their statutory and ethical duty to fully investigate this case, and the claims available—or potentially available—to Mr. Brown. Under prevailing professional norms of capital post-conviction representation, and the specific facts of this case, as discovered through counsel's diligent investigation, at a minimum, counsel must interview witnesses—in person—and have Mr. Brown evaluated by experts. The pandemic has made neither of things possible since March 13, 2020.

The evidence developed through that further investigation—when it is possible—may support (1) allegations timely raised in the Petition, (2) new allegations that, pursuant to Fed. R. Civ. P. 15(c)(1), relate back to a claim timely raised in the Petition, (3) new allegations or claims that do not relate back but for which Mr. Brown is entitled to equitable tolling under *Holland v. Florida*, 560 U.S. 631, 649 (2005). Or, the evidence may form (4) the factual predicate for a new claim or claims that could not have been discovered earlier, and that therefore will be timely under 28 U.S.C. § 2244(d)(1)(D) if filed within one year of the restrictions being lifted. No one can know for certain what evidence is out of reach due to the limitations imposed by efforts to slow the spread of the disease. But the investigation so far points to additional, favorable evidence that is inaccessible through the exercise of due diligence.

2

The evidence became inaccessible on or about March 13, 2020, when Governor Greg Abbott declared a state of disaster for the State of Texas, and the Federal Defender, like others, restricted travel and other activities in order to preserve individual and public health and safety. It was also on March 13, 2020, in accordance with the Governor's declaration and in effort to prevent and mitigate the spread of the virus, the Texas Department of Criminal Justice ("TDCJ") suspended visitation at all of its facilities.

Under the current scheduling order, and Fed. R. Civ. P. 15(a)(1)(B), Mr. Brown may amend his petition "once as a matter of course" 111 days after September 11. The order gives the State 90 days to answer, and an amendment would be due 21 days later. The extraordinary and prolonged restrictions created by the pandemic could constitute grounds for allowing further or delayed amendment of the Petition under Fed. R. Civ. P. 15(a)(2). Indeed, on September 7, 2020, Governor Abbott extended the statewide disaster declaration for COVID-19.[1]

These amendments and related filings will likely draw additional responses from the State. Under these extraordinary circumstances, the more efficient and equitable approach would be to delay the State's answer until Mr. Brown has had a reasonable time (183 days), after the restrictions and limitations are lifted, to complete his investigation and amend "as a matter of course."

Present circumstances leave a great deal of uncertainty. No one can know when infection rates will allow the relaxation of travel restrictions and other impediments to investigation. No one can say when TDCJ will reopen prisons to visitors or professionals. By filing his Petition and this Motion, Mr. Brown reduces some of the uncertainty. He provides notice of extraordinary circumstances and their effects on his ability to plead claims through due diligence. He requests that the scheduling order be modified so as to avoid unnecessary work, confusion, or surprise, and so

---

[1] https://gov.texas.gov/news/post/governor-abbott-extends-statewide-disaster-declaration-for-covid-19-5

that the State and this Court have expectations borne of the most accurate and current information available. That is, Mr. Brown is doing everything within his power to avoid undue delay or prejudice to his interests or the State's.

## II. Procedural History

Micah Crofford Brown was convicted of capital murder in Hunt County, Texas on May 24, 2013, and sentenced to death on June 3, 2013. The Texas Court of Criminal Appeals ("CCA") affirmed Mr. Brown's conviction and sentence on September 16, 2015. *Brown v. State*, No. AP-77,019, 2017 WL 5453765 (Tex. Crim. App. Sept. 16, 2015). No petition for writ of certiorari was filed.

Prior to his judgment becoming final, Mr. Brown properly filed an application for state habeas corpus relief on January 15, 2015, while his direct appeal was pending. On September 11, 2019, the CCA denied Mr. Brown relief in his state habeas proceedings. *See Ex parte Brown*, No. WR-85,341-01, 2019 WL 4317041 (Sept. 11, 2019). Because his properly filed state habeas application was pending on the date his judgment became final, the presumptive one-year limitations period for filing a federal habeas petition did not begin to run until the CCA denied relief in Mr. Brown's state habeas proceedings.[2] *See* 28 U.S.C. §§ 2244(d)(1)(A), 2244(d)(2).

On October 23, 2019, a magistrate judge of this Court appointed the Capital Habeas Unit in the Office of the Federal Public Defender for the Western District of Texas, as counsel of record for Mr. Brown pursuant to 18 U.S.C. § 3599.[3] ECF No. 9. In the order appointing counsel, the magistrate judge also set a deadline of May 1, 2020, for Mr. Brown to file his federal habeas corpus

---

[2] Congress has identified three additional triggering events that can act to commence the limitations period. *See* 28 U.S.C. § 2244(d)(1)(B-D). If more than one of the four trigger events applies, the "limitation period shall run from the latest" of the applicable events. 28 U.S.C. § 2244(d)(1).
[3] Mr. Brown, through state habeas counsel, sought the appointment of federal habeas counsel on September 27, 2019. ECF No. 1.

petition. *Id.* This deadline was 133 days prior to the presumptive 1-year statutory deadline of September 11, 2020.[1]

On March 23, 2020, Mr. Brown moved to have the May 1, 2020 deadline reset to comply with the presumptive 1-year date set forth in 28 U.S.C. § 2244(d)(1)(A), or alternatively, for a 60-day extension. ECF No. 22. Mr. Brown's motion cited the "rapidly developing circumstances related to the novel coronavirus, COVID-19," as a basis for the motion. *Id.* at 1. On April 17, 2020, the Court granted, in part, Mr. Brown's motion, granting a 60-day extension to the May 1 deadline, making the due date July 1, 2020. ECF No. 24.

On June 9, 2020, Mr. Brown filed a second motion to extend the deadline to file his habeas petition. ECF No. 25. Mr. Brown explained that the restrictions imposed by the global pandemic made the July 1, 2020 deadline impracticable. *Id.* at 1. The following day, "[i]n light of the COVID-19 pandemic, as explained in the motion," the Court granted Mr. Brown's motion for an extension of the July 1, 2020 deadline. ECF No. 26 at 1. Pursuant to that order, Mr. Brown's habeas petition was to be served and filed on or before September 11, 2020, one year from the date the CCA denied Mr. Brown's state habeas application. *Id.* The order also directs that the State must file its answer on or before ninety days from the date of Mr. Brown's filing, *id.* at 2, and Mr. Brown will then have thirty days to file a reply. *Id.* at 4. In accordance with the Court's order, Mr. Brown is contemporaneously filing and serving his initial federal habeas petition.

Within the first month after undersigned counsel was appointed to represent Mr. Brown on October 23, 2019, counsel actively litigated issues to protect Mr. Brown's statutory rights, *see* ECF Nos. 11, 14, and began work on Mr. Brown's case. Counsel met with Mr. Brown on death row and obtained his file from state habeas counsel. Soon after, counsel began reviewing the record of Mr.

---

[1] Mr. Brown objected to portions of the magistrate judge's scheduling order, including the May 1 deadline. ECF No. 14. The objections were overruled. ECF No. 20.

Brown's trial, direct appeal, and state habeas proceedings. Counsel was diligently investigating and preparing Mr. Brown's petition when, less than five months after being appointed by this Court, the global pandemic spread to Texas, immediately and unexpectedly impeding counsel's efforts.

The contemporaneously filed Petition for Writ of Habeas Corpus may assure this Court that counsel are acting with due diligence to the best of their abilities under a disaster declaration.

### III. Reasons for granting relief

The global pandemic, COVID-19, has brought about extraordinary circumstances that compelled a state-wide declaration of disaster in Texas that has been in effect since March 13, 2020. These extraordinary circumstances have prevented counsel from completing the diligent investigation that began prior to the battle against COVID-19. The limitations on investigation—including restrictions on travel and interpersonal contact, and the suspension of visitation at the prison where Mr. Brown resides—have prevented Mr. Brown's counsel from fulfilling their statutory and ethical obligations to fully investigate this case, and the claims available—or potentially available—to Mr. Brown. Modification or suspension of the current scheduling order will avoid unforeseen and unintended results that, due to the limitations on investigation that have been necessary to stem the spread of the virus, are both inefficient and inequitable.

### A. Extraordinary Circumstances – COVID-19

On March 11, 2020, the World Health Organization declared a global pandemic. The outbreak related to the novel coronavirus, or COVID-19. COVID-19 is a highly contagious, and potentially deadly respiratory illness that causes fever, cough and shortness of breath. *See* Centers for Disease Control and Prevention (CDC), Coronavirus Disease 2019 (COVID-19).[5]

---

[5] *See* https:// https://www.cdc.gov/coronavirus/2019-nCoV/index.html

On March 13, 2020, Texas Governor Greg Abbott declared a state of disaster in Texas, taking unprecedented actions to address the COVID-19 virus outbreak.[6] Governor Abbott, other local and national officials and their advisors have all emphasized that limiting person-to-person contact is essential, in order to limit the spread of the virus. In his March 13, 2020 declaration, Governor Abbott informed the public that: the virus could be transmitted "between individuals who are in close contact with each other," while urging all citizens to heed official advice "to protect their health and safety."[7]

Public health directives precluded travel. Preventing the spread of the virus required suspension of in-person efforts to collect and inspect records, interviews with witnesses, and the scheduling and performance of expert inspections, analyses, and examinations. Respondent suspended all in-person contact with Mr. Brown and all other incarcerated inmates to "prevent and mitigate the spread of the virus" and to provide and maintain a "safe and healthy environment for all involved."[8]

Since March 2020, the global pandemic has not gone away. Rather, it has spread and accelerated. The Governor of Texas renewed the state of disaster on July 10, 2020, after an alarming number of people became infected with the virus,[9] and again on August 8, 2020.[10] Governor Abbott most recently renewed the declaration on September 7, 2020.[11] As universities and schools reopen,

---

[6] *See* https://gov.texas.gov/news/post/governor-abbott-declares-state-of-disaster-in-texas-due-to-covid-19

[7] *Id.*

[8] Texas Department of Criminal Justice, Procedures Implemented in Response to COVID-19 March 11, 2020, http://www.tdcj.texas.gov/video/Communicable_Disease.html

[9] *See* https://gov.texas.gov/news/post/governor-abbott-extends-statewide-covid-19-disaster-declaration-2

[10] *See* https://gov.texas.gov/news/post/governor-greg-abbott-renews-covid-19-disaster-declaration-3

[11] *See* https://gov.texas.gov/news/post/governor-abbott-extends-statewide-disaster-declaration-for-covid-19-5

the state is facing new struggles to contain the virus.[12] As of September 9, 2020, there were 662,427 confirmed cases, and 13,792 deaths in Texas.[13]

The unforeseen and unprecedented circumstance that have arisen from the COVID-19 pandemic are beyond Mr. Brown's control and more than suffice as extraordinary circumstances.[14]

### B.   Limitations on investigation

The necessary measures taken to slow the pandemic have effectively curtailed counsel's investigation. *See United States v. Crusius*, No. EP-20-CR-0039-DCG, ECF No. 95 (Memorandum Opinion and Order) at 4 (W.D.Tex. Jul. 28, 2020). The importance of a meaningful investigation, which includes a mitigation investigation, cannot be understated. However, counsel's ability to complete such an investigation has been limited due to ongoing efforts to manage the spread of COVID-19. Counsel has been impeded in their efforts to conduct in-person interviews with witnesses, meet with Mr. Brown in person, obtain records and documents, and have experts evaluate

---

[12] *See* https://www.texastribune.org/2020/09/08/texas-universities-coronavirus-parties/; https://www.texastribune.org/2020/09/02/texas-schools-coronavirus-tests/
[13] https://coronavirus.jhu.edu/region/us/texas
[14] A number of federal courts have found COVID-19 an "extraordinary circumstance" in the context of equitable tolling of the limitations period in § 2244(d)(1). *See e.g., Cowan v. Davis*, No. 1:19-cv-00745, 2020 WL 1503423, at *2 (E.D.Cal. Mar. 30, 2020) (noting the "extraordinary and unforeseeable circumstances arising from the COVID-19 pandemic"); *Cowan v. Davis*, No. 1:19-cv-00745, 2020 WL 4698968, at *3 (E.D.Cal. Aug. 13, 2020) (again noting the "extraordinary circumstances brought about by the COVID-19 pandemic"); *Hutto v. Cain*, No. 3:20-CV-98, slip op. at 1, 2 (S.D.Miss. Jun. 6, 2020) (finding the "[pandemic] situation presents a rare and exceptional event," and finding the petitioner's situation "is rare and extraordinary"); *Fitzgerald v. Shinn*, No. CV-19-5219, 2020 WL 3414700, at *2 (D.Ariz. Jun. 22, 2020) ("Without question, the global COVID-19 pandemic is an extraordinary circumstance that is currently interfering with the development of Petitioner's habeas claims because the claims require additional investigation, including extensive travel and the assistance of experts."); *Brown v. Davis*, No. 1:19-cv-01796, slip op. at 13 (E.D.Cal. Aug. 27, 2020) (noting the "extraordinary circumstances brought about by the COVID-19 pandemic");*see also Pickens v. Shoop,* No. 1:19-cv-558, 2020 WL 3128536, at *3 ("It also seems obvious that 'extraordinary circumstances' likely stand in the way of [Petitioner] timely filing a complete petition. In fact, that is probably an understatement.").

Mr. Brown. These limitations have prevented Mr. Brown's counsel from fulfilling their professional and ethical obligations.

### 1. Prevailing professional norms

The American Bar Association ("ABA") Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines" or "Guidelines"), first adopted in 1989, were revised and updated in 2003 to accurately reflect current death penalty law and practice. 31 Hofstra L. Rev. 913 (2003). After the revision of the ABA Guidelines in 2003, the Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases ("Supplementary Guidelines") were developed to address the urgent need to help defense counsel understand how to supervise the development of mitigation evidence and direct a key member of the defense team, the mitigation specialist. Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases, 36 Hofstra L. Rev. 679 (2008). The Supplementary Guidelines are a complementary extension of the ABA Guidelines.[15]

Counsel is obligated to "conduct thorough and independent investigations relating to the issues of both guilt and penalty." ABA Guidelines, Guideline 10.7(A); Guideline 10.15.1, Commentary, at 1085-86. This obligation includes seeking out and interviewing potential witnesses having purported knowledge of the events surrounding the offense itself, and "witnesses familiar with aspects of the client's life history that might affect the likelihood that the client committed the charged offense(s), and the degree of culpability for the offense." ABA Guidelines, Guideline 10.7, Commentary, at 1019.

---

[15] The ABA Guidelines and the Supplementary Guidelines have been cited favorably in hundreds of state and federal capital appellate decisions, including the United States Supreme Court. *See* Ex. 1 (Olson-Gault Decl. ¶ 7).

Finding and interviewing witnesses who have known a capital defendant throughout his life is an essential component of a mitigation investigation. And, in-person interviews with the client, witnesses, and family members are at the core of any adequate investigation. The Supplementary Guidelines describe the importance of in-person interviews:

> Team members must conduct *in-person, face-to-face, one-on-one* interviews with the *client,* the client's family, and other witnesses who are familiar with the client's life, history, or family history or who would support a sentence less than death. Multiple interviews will be necessary to establish trust, elicit sensitive information and conduct a thorough and reliable life-history investigation. Team members must endeavor to establish the rapport with the client and witnesses that will be necessary to provide the client with a defense in accordance with constitutional guarantees relevant to a capital sentencing proceeding.

Supplemental Guideline 10.11(C) (emphasis added). "Remote technology options such as video conferencing and phone calls do not provide an adequate alternative for capital defenders, mitigation specialists, experts, or investigators." Ex. 1 (Olson-Gault Decl. ¶ 25).

Since March 2020, stay-at-home orders from State and local officials, and guidelines from the Centers for Disease Control ("CDC") have restricted travel and in-person contact with others in an attempt to stop the spread of the virus. This has significantly limited the ability of Mr. Brown's counsel to travel and conduct in-person interviews.

 "In-person visits with the client and client's family are also a crucial tool in dictating the defense team's choices regarding necessary mental health screening and experts, which are especially important given the near-ubiquity of mental health issues in capital cases." Ex. 1 (Olson-Gault Decl. ¶ 27). "In many cases, the results of such observation render a 'psychologist or other mental health expert [] a needed member of the defense team.'" *Id.* (quoting ABA Guidelines, Guideline 10.4, Commentary, at 1004).

In-person interviews were halted on March 13, 2020. This was necessary and appropriate not only for the well-being of the legal team, but also those witnesses whom they might contact. Lay

10

witnesses are often the most powerful evidence presented in support of a sentence less than death, and it is essential to seek out and meet potential witnesses in person, particularly family members. The sharing of personal family memories, often which can be difficult, requires that the defense team establish rapport, spending time to earn the trust of witnesses and to obtain the necessary family and social history information. This process is necessarily personal and emotional, and must be done in person in order to be effective.

Attached to this motion is a comprehensive Declaration on the Impacts of COVID-19 Pandemic On Mitigation Investigation. Ex. 2 (Decl. of Elizabeth Vartkessian, Ph.D.). This declaration accurately describes the challenges that capital defense teams, like Mr. Brown's, have been experiencing. As set forth in the declaration, Ms. Vartkessian is a well-respected national expert on mitigation investigation in capital cases; she has worked extensively in all Federal Circuits including the Fifth Circuit; and she is an investigator licensed by the State of Texas.

Similarly, attached is a declaration from Emily Olson-Gault, Esq., current Director and Chief Counsel of the American Bar Association Death Penalty Representation Project. Ex. 1 (Olson-Gault Decl.). The declaration describes in detail how health concerns related to COVID-19 have affected the ability of capital defense teams to timely carry out their duties and obligations under the standards set forth in the ABA Guidelines and Supplementary Guidelines. *Id.* Counsel will not set forth the entirety of the declarations herein but incorporates them by reference.

### 2. Specific facts of this case

#### a. In-person meetings with Mr. Brown

Since March 13, 2020, Mr. Brown's legal team has not been able to visit Mr. Brown. Out of health and safety concerns, TDCJ has suspended all visitation at the Polunsky Unit where Mr. Brown is incarcerated. In-person contact with the client is essential for establishing a relationship of trust with the client. *See* ABA Guidelines, Guideline 10.11(C); Guideline 10.5 and Commentary ("Client

contact must be ongoing, and include sufficient time spent at the prison to develop a rapport between attorney and client.") (emphasis added); Guideline 10.15.1(E)(1)-(2) (Post-conviction counsel must "maintain close contact with the client" and "monitor the client's mental, physical, and emotional condition [].").

Moreover, "[c]ounsel at all stages of the case should engage in an interactive continuing dialogue with the client concerning all matters that might reasonably be expected to have a material impact on the case, such as: [investigation and assistance client might provide, legal issues, and client's relationship with others]." ABA Guidelines, Guidelien10.5(C). These communications enable counsel to not only be assisted by their client, but also to gauge the client's reactions, and appreciation of the legal and factual work on the case. These essential communications cannot be accomplished through telephone calls,[16] which are essentially aimed at maintaining an existing relationship, but which do not permit meaningful, essential interactive dialogue and the critical opportunity to observe. Counsel's observation of Mr. Brown's mental state are a necessary part of representation. *See* Ex. 1 (Olson Decl. ¶ 27) (citing ABA Guideline 4.1, Commentary, at 956).

### b. Inability to have Mr. Brown evaluated by experts

Mr. Brown has retained experts to assist in these capital habeas proceedings. Two of these experts have reviewed available materials related to Mr. Brown's case, and have indicated that in order to fully inform their opinion, they will need to meet with Mr. Brown in-person. *See* Ex. 3 (Gumkowski Decl. ¶ 7). As the prison where Mr. Brown resides has suspended visitation, this is not possible. Once the prison is re-opened to visitation, arrangements will have to be made for these experts to meet with Mr. Brown—amidst an almost certain overwhelming wave of requests due to the prolonged visitation suspension.

---

[16] Mr. Brown's team is able to communicate with Mr. Brown through 30-minute phone calls, where there are no assurances of confidential communications.

### c.  In-person witness interviews

As discussed above, Mr. Brown's counsel is obligated to follow the Guidelines that have been set by the ABA for representation in a capital case. These Guidelines include conducting in-person interviews with witnesses. Due to the efforts to manage COVID-19, counsel has not been able to fulfil these obligations. Conducting in-person interviews during these times would go against the relevant orders and advice of government officials and public health authorities concerning public health and safety. Doing so would also risk damaging any possible relationship between Mr. Brown's counsel and potential witnesses.

One of Mr. Brown's counsel has a compromised immune system which places them in a heightened risk category for infection and serious illness. Similarly, there are potential witnesses that are also likely at high risk due to their age and existing medical conditions. Many of the potential witnesses are located in Texas, where deaths and hospitalizations have continued to rise and spike since March.

In-person interviews are necessary, at a minimum, to re-investigate Mr. Brown's life history and complete an adequate mitigation investigation and to provide additional support for his claims of ineffective assistance of counsel, misconduct, mitigation, and juror bias. Until these in-person interviews are conducted, it cannot be know what additional information will be gained, and how that information may be useful to Mr. Brown.

### C.  Fruits of further investigation are likely

Investigation done so far points to additional, favorable evidence that is inaccessible through the exercise of due diligence. Information known to Mr. Brown's counsel at this time, and contained within his initial Petition, strongly suggests that when Mr. Brown can be properly evaluated (in-person) by his experts, the results are likely to include significant favorable mitigation evidence that could have been, but was not, investigated, discovered, developed and presented at trial, or in state

13

habeas proceedings. Similarly, for the reasons described above, in-person witness interviews are also likely to provide useful information, as will follow-up, in-person meetings with Mr. Brown himself.

It is possible, and rather likely, that upon further investigation—when possible—evidence will be developed that may support the allegations timely raised in Mr. Brown's initial Petition, or new allegations that relate back to a claim timely raised, pursuant to Fed. R. Civ. P. 15(c)(1). Additionally, this evidence may support new allegations or claims that do not relate back, but for which Mr. Brown is entitled to equitable tolling under *Holland v. Florida*, 560 U.S. 631, 649 (2005). Or, the evidence may be such that it forms the factual predicate for a new claim or claims that could not have been discovered earlier, and that therefore will be timely under 28 U.S.C. § 2244(d)(1)(D) if filed within one year of the restrictions being lifted. The likelihood that further investigation will result in the development of evidence that falls within one of these categories is great. However, because of the unexpected and exceptional circumstances of COVID-19, and the necessary restrictions imposed to fight the pandemic, one cannot know what that evidence is, or in what category it will fall. If this information supports a ground for habeas relief, Mr. Brown should be permitted to present it to the Court as he would under normal circumstances.

### D.  In light of the extraordinary circumstances, the current scheduling order is neither efficient nor equitable, and modification or suspension of the order will produce more efficient and equitable results

Based on the current scheduling order, ECF No. 26, Mr. Brown would have 111 days from the date his initial Petition is filed to amend his pleading as a matter of course (90 days for the State to answer and then 21 days for Mr. Brown to amend). *See id.;* Fed. R. Civ. P. 15(a)(1)(B).

It seems entirely unlikely that, under the current order and due to present circumstances, conditions will be such that Mr. Brown will be able to complete his investigation within the currently allotted time. When conditions are lifted and the investigation can be completed, Mr. Brown reasonably expects to file an amended petition that will contain new allegations, and potentially new

claims. This will likely draw a response from the State. If this is not possible within the currently allotted time, Mr. Brown could then seek leave to amend a second time. *See* Fed. R. Civ. P. 15(a)(2) (permitting amendment with the opposing party's written agreement or the Court's leave, and noting that the Court "should freely give leave when justice so requires"). If leave were granted, or the State was in agreement, the State would likely want to file a response to the amended pleading.

Given the multiple filings that accommodating a state- and nationwide disaster will no doubt precipitate, the current scheduling order does not seem to be the most efficient way to proceed considering the current circumstances and potential results.

In order to avoid the inefficiency of a second answer, before the pandemic, the State agreed in more than one instance to delaying its answer until after the petitioner had a reasonable time to amend. *See Cade v. Davis,* No. 3:17-cv-3396, ECF No. 49 (N.D.Tex. Nov. 11, 2018) (motion for joint scheduling order allowing for amendment prior to State's answer); *see also Rubio v. Davis*, No. 1:18-cv-00088, ECF No. 18 (S.D.Tex. Sept. 4, 2019) (motion requesting leave to amend based upon agreement with the State), ECF No. 26 (joint proposed scheduling order delaying State's answer until after petitioner amended); *Brewer v. Davis*, No. 2:15-cv-00050, ECF No. 40 (N.D.Tex. May 5, 2016) (State's initial answer filed after amended petition).

Allowing Mr. Brown a reasonable time (in this case 183 days) to amend as a matter of course, after conditions reopen and he can complete his investigation, creates certainty and provides flexibility to minimize delay. This also gives the parties and the Court the best opportunity to assess, based on all the facts, the timeliness vel non of any new allegations or claims.

Unintended, unanticipated, and inefficient results can be avoided by modifying or suspending the current schedule in recognition of the extraordinary circumstances and their current and future effects on these proceedings, or by staying these proceedings upon the filing of Mr. Brown's initial habeas petition.

15

### IV. Conclusion

For the forgoing reasons, the Court should grant Mr. Brown's motion, modify or suspend operation of, the scheduling order, and direct the parties to file quarterly advisories or when the Courts determines are appropriate. Alternatively, the Court should stay these proceedings and direct the parties to file regular advisories.[17]

DATED:  September 11, 2020          Respectfully submitted,

                                    MAUREEN FRANCO
                                    FEDERAL PUBLIC DEFENDER


                                    /s/ Timothy P. Gumkowski
                                    Timothy P. Gumkowski
                                    Texas Bar No. 24104788
                                    Assistant Federal Defender
                                    Office of the Federal Public Defender
                                    Capital Habeas Unit
                                    919 Congress, Suite 950
                                    Austin, Texas 78701
                                    737-207-3007 (tel.)
                                    512-499-1584 (fax)
                                    Tim_gumkowski@fd.org

                                    *Counsel for Petitioner Micah Crofford Brown*

---

[17] A similar procedure was recently ordered in another capital habeas proceeding. *Nunnery v. Gittere*, No. 3:19-cv-00618 (D. Nev. Aug. 24, 2020), ECF No. 19.

## CERTIFICATE OF CONFERENCE

On September 10, 2020, undersigned counsel for Petitioner conferred with counsel for Respondent, Assistant Attorney General Erich Dryden, who authorized Petitioner to state that Respondent opposes the relief sought in this Motion.

*/s/ Timothy Gumkowski*
Timothy Gumkowski

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September, 2020, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Erich Dryden
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400 (tel.)
(512) 320-8132 (fax)
erich.dryden.oag.texas.gov

*/s/ Timothy Gumkowski*
Timothy Gumkowski

17