UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICAH CROFFORD BROWN,<br><br>   Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN, Director, Texas Department of Criminal Justice, Institutions Division,<br><br>   Respondent. | §<br>§<br>§<br>§<br>§ Cause No. 3:19-cv-2301-L-BN<br>§<br>§<br>§ CASE INVOLVING THE DEATH<br>§ PENALTY<br>§<br>§ |

**PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER**

TO THE HONORABLE SAM A. LINDSAY, UNITED STATES DISTRICT JUDGE:

  Petitioner, MICAH CROFFORD BROWN, by and through his undersigned counsel, and pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Rule 72.1, objects to the Magistrate Judge's order, ECF No. 31 ("Order"), denying Petitioner's Motion to Modify or Suspend Scheduling Order Due to Extraordinary Circumstances, ECF No. 30 ("Motion"), and moves for reconsideration of said order by the District Judge.

DATED:  October 1, 2020     Respectfully submitted,

                MAUREEN FRANCO
                FEDERAL PUBLIC DEFENDER

                */s/ Timothy P. Gumkowski*
                Timothy P. Gumkowski
                Texas Bar No. 24104788
                Assistant Federal Defender
                Office of the Federal Public Defender
                Capital Habeas Unit
                919 Congress, Suite 950

Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)
Tim_gumkowski@fd.org

*Counsel for Petitioner Micah Crofford Brown*

## TABLE OF CONTENTS

I. Background ................................................................................................................... 1
II. Argument ..................................................................................................................... 3
    A. Legal Standard ................................................................................................... 3
    B. Authority to Grant Petitioner's Motion ........................................................... 4
    C. Factual Inaccuracies in the Order ..................................................................... 4
    D. No Legal Support for Denying the Motion ...................................................... 7
III. Conclusion ................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Brown v. Thaler*,
   684 F.3d 482 (5th Cir. 2012) .................................................................................................. 11

*Clinton v. Jones*,
   520 U.S. 681 (1997) .................................................................................................................. 4

*Correll v. v. Ryan*,
   539 F.3d 938 (9th Cir. 2008) .................................................................................................. 10

*Doe v. Ayers*,
   782 F.3d 425 (9th Cir. 2015) .................................................................................................. 10

*Eaton v. Wilson*,
   No. 09-cv-261, 2014 WL 6622512 (D. Wyo. Nov. 20, 2014) ....................................................... 10

*Ferrell v. Hall*,
   640 F.3d 1199 & 1229 (11th Cir. 2011) .................................................................................. 10

*Harries v. Bell*,
   417 F.3d 631 (6th Cir. 2005) .................................................................................................. 10

*Johnson v. Lumpkin*,
   No. 3:19-cv-2310-E, ECF No. 23 (N.D.Tex. Sept. 14, 2020) ........................................................ 2

*Landis v. North American Co.*,
   299 U.S. 248 (1936) .................................................................................................................. 7

*Lonchar v. Thomas*,
   517 U.S. 314 (1996) .................................................................................................................. 7

*Marinechance Shipping, Ltd. v. Sebastian*,
   143 F.3d 216 (5th Cir. 1998) .................................................................................................... 4

*Peretz v. United States*,
   501 U.S. 923 (1991) .................................................................................................................. 3

*Rhines v. Weber*,
   544 U.S. 269 (2005) .................................................................................................................. 5

*TSI USA, LLC v. Uber Techs., Inc.*,
  No. 3:16-CV-2177-L, 2017 WL 3209399 (N.D. Tex. June 19, 2017) .............................. 3

*United States v. United States Gypsum Co.*,
  333 U.S. 364 (1948) ........................................................................................................ 4

**Statutes and Rules**

18 U.S.C. § 3599(a) ............................................................................................................. 8, 9

18 U.S.C. § 3599(f) .............................................................................................................. 8, 9

28 U.S.C. § 636(b)(1)(A) ........................................................................................................ 1

28 U.S.C. § 2244(d) ........................................................................................................... 8, 9

Federal Rule of Civil Procedure 72(a) ................................................................................. 1

Local Rule 72.1 ...................................................................................................................... 1

**Other Authorities**

United States District Court for the Northern District of Texas Criminal
  Justice Act Plan ............................................................................................................. 10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICAH CROFFORD BROWN,<br><br>Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN, Director, Texas Department of Criminal Justice, Institutions Division,<br><br>Respondent. | §<br>§<br>§<br>§<br>§ Cause No. 3:19-cv-2301-L-BN<br>§<br>§<br>§ CASE INVOLVING THE DEATH<br>§ PENALTY<br>§<br>§ |

## BRIEF IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

### I. Background

This is a capital habeas proceeding in which Petitioner filed an initial habeas petition on September 11, 2020. ECF No. 29. Contemporaneous to the filing of his initial petition, Petitioner filed a motion seeking relief due to the global pandemic, COVID-19, and its continued effects on his ability to fully and adequately investigate his case. ECF No. 30. Specifically, Petitioner sought modification of the current scheduling order, ECF No. 26, such that he would be permitted a reasonable time (182 days) after limitations on his investigation were lifted to complete his investigation and file an amended petition, prior to Respondent filing an answer. ECF No. 30 at 1-2. Petitioner contended that such modification would be both more equitable and more efficient than the scheduling order in light of the current extraordinary circumstances. Petitioner provided factual support for his Motion, including declarations from a national expert on mitigation investigations in capital cases, the Director and Chief Counsel of the American Bar Association Death Penalty Representation Project, and Petitioner's current counsel. *Id.* at Exs. 1-3. Petitioner's Motion also cited "information . . . contained within his initial habeas Petition" which "strongly

suggests that when Mr. Brown can be properly evaluated (in-person) by his experts, the results are likely to include significant favorable mitigation evidence that could have been, but was not, investigated, discovered, developed and presented at trial, or in state habeas proceedings." *Id.* at 13-14. Petitioner's initial habeas petition cites two declarations from mental health experts which were attached to the petition. ECF No. 29 at 43, 44, 79, 82; Exs. 2, 3.

In his motion, Petitioner stated that he had identified claims that required expert services, and two of his retained experts indicated they needed to evaluate Petitioner in-person to fully render their opinions. Mot. at 12. Petitioner explained that this was not possible as the prison where he resides has been closed to visitors since March 13, 2020.

On September 17, 2020, before hearing from the State, the Magistrate Judge entered an Order denying Petitioner's Motion. ECF No. 31. The Order cited no statute, rule, or judicial decision. It did, however, enumerate several findings regarding what the Magistrate Judge determined Petitioner failed to allege in his motion. *Id.* These findings were contrary to the record and unsupported by law. Moreover, the findings, which could reasonably be read as the basis for denying the Motion, are antithetical to the recognized professional norms and expectations of counsel in capital habeas proceedings, and the policies of this Court.

It is important to note that the Oder in this case is nearly identical to the order entered by a *different* judge, in a *different* capital habeas proceeding in this same Division, three days prior to the Order in Petitioner's case. *See Johnson v. Lumpkin*, No. 3:19-cv-2310-E, ECF No. 23 (N.D.Tex. Sept. 14, 2020). Mr. Johnson's case is in a similar procedural posture as Petitioner's, and Mr. Johnson filed a motion seeking relief from the court due to the extraordinary circumstances of COVID-19. *Id.* at ECF No. 22. Mr. Johnson's motion contains factual allegations, assertions and desired relief different than those in Petitioner's Motion. Notwithstanding the factual differences in

2

the two cases and the respective motions, two different judges, in two different cases entered virtually identical orders denying relief. In neither case was the State given time to respond.

Petitioner objects to the Magistrate Judge's findings as they are inaccurate, contrary to the record and unsupported by the law. Petitioner also objects to the Magistrate Judge's decision to deny the relief sought in the Motion.

## II. Argument

### A. LEGAL STANDARD

As this Court has stated,

> A district court may modify or set aside these rulings only if they are "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). The "clearly erroneous" standard applies to the magistrate judge's factual determinations. *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994). A magistrate judge's determination is "clearly erroneous" when, "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 481 (N.D. Tex. 2001) (internal citation omitted). The "contrary to law" standard applies to the magistrate judge's legal conclusions. *Smith*, 154 F.R.D. at 665. The district court reviews a magistrate judge's legal conclusions de novo. *Id.*

*TSI USA, LLC v. Uber Techs., Inc.*, No. 3:16-CV-2177-L, 2017 WL 3209399, at *1 (N.D. Tex. June 19, 2017).[1]

Here, the Court should reconsider the magistrate judge's Order, and reverse the decision to deny relief. Despite the suggestion in the Order, the law does not require Petitioner to check off all the boxes for the enumerated allegations the magistrate judge identified in its Order.

---

[1] Mr. Brown invokes his "personal right to an Article III adjudicator." *Peretz v. United States*, 501 U.S. 923, 929 n.6 (1991).

### B. AUTHORITY TO GRANT PETITIONER'S MOTION

This Court has "the inherent authority to control its docket" and the "discretionary authority to handle [a] case in the most efficient way." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998). The inherent power to control its own docket includes the power to stay proceedings. *See Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). Through his Motion, Petitioner was simply asking the Court to exercise its authority in a case where such authority and discretion is most appropriate and justified. The Magistrate Judge's Order makes no mention of this authority nor any other legal basis for granting or denying the motion.

### C. FACTUAL INACCURACIES IN THE ORDER

The Order contains several clearly erroneous factual inaccuracies that appear to provide the basis for the denial of Petitioner's Motion. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). The Order's factual bases are clearly erroneous.

The Order states that Petitioner requested "an open-ended extension of time within which to file an amended petition." Order at 1. This is not accurate. Petitioner's Motion clearly requested a 182-day period of time that would begin with a specific event. *See* Mot. at 1-2. Petitioner sought a "reasonable time," after the limitations on investigations were lifted, to complete his investigation and file an amended petition. Petitioner contended that, in this case, a "reasonable time" would be 182 days, and set forth the reasons why such time was reasonable. *Id.* This specific request and reasoning were either overlooked or misunderstood in the Order.

That the start date of the period Petitioner requested is unknown, does not make his request open-ended. The uncertainty of Petitioner's request for relief lies in the starting point for making the

4

calculation: when the Governor will lift the emergency declaration. Petitioner has no way of knowing precisely when the limitations on his investigation will be lifted, such as when his counsel and retained experts will be permitted to visit the prison where Petitioner is held.

To the extent Petitioner sought alternative relief in the form of a stay of the proceedings, the Order describes this request as a "motion for an indefinite stay." Order at 1, 2. While Petitioner did not repeat the precise amount of time (182 days) that he requested in his primary request for relief, it is reasonable to read his request for "a stay of these proceedings to account for the ongoing effects of COVID-19," as incorporating the same time requested in the preceding paragraph.[2] Mot. at 15.

And, even if Petitioner's requests were fairly described as "open-ended," or for an "indefinite stay," this would not seem to be a reasonable basis for denying the motion. Certainly, the Order provided no legal authority to support such a determination. Court's frequently grant stays that could be described as equally "open-ended" in the sense that there is no way of knowing when a state-actor will take the action necessary to end the stay. Stays pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), are one example.

Among the enumerated bases for denying the Motion, the Magistrate Judge found that: "Petitioner does not allege any specific facts showing that (1) he can identify any specific claim or potential claim that he was unable, despite the exercise of due diligence, to fully investigate prior to filing his initial petition on September 11, 2020." Order at 1. This is clearly erroneous.

Petitioner alleged that he had identified at least three claims that required expert services, Mot. Ex. 3 ¶ 5, and that two of his retained experts indicated they needed to evaluate Petitioner in person. Mot. at 12. These facts show that Petitioner *can* identify specific claims or potential claims

---

[2] The Magistrate Judge did not allow the State to respond to Petitioner's Motion. Had the State raised the concern expressed by the Magistrate Judge, Petitioner could have clarified his position in a reply.

5

that he has was unable to fully investigate prior to filing his initial petition. While the prison is closed to visitors, no amount of diligence would allow for these experts to get into the prison to evaluate Petitioner in-person.

Similarly, the Order stated that Petitioner had not alleged any specific facts showing that: "he was unable, despite the exercise of due diligence, to communicate adequately via the United States Postal Service, the telephone, or other available electronic methods of communication, with any identified individual concerning any such potential claim." Order at 1. Again, the finding is clearly erroneous. Petitioner's Motion described the inability of adequate communications between Petitioner and counsel, and Petitioner and retained experts. Mot. at 11-12.

The Magistrate Judge also found that Petitioner failed to allege any specific facts showing that: "any existing legal authority authorizes this Court to extend the statutory deadline for the filing of Petitioner's initial petition beyond September 11, 2020." Order at 2. First, Petitioner did not ask the Court to extend the statutory deadline beyond September 11, 2020. In fact, Petitioner filed his initial Petition on that date. Second, Petitioner *did* cite to legal authority that would permit the Court to extend the deadline in the form of equitable tolling. *See* Mot. at 14 (citing *Holland v. Florida*, 560 U.S. 631, 649 (2005)).

Similarly, the Order found that Petitioner did not allege any specific facts showing that: "any existing legal authority that authorizes this Court to address the merits of a claim included in an amended petition filed after September 11, 2020 that does not relate back to a claim contained in Petitioner's initial petition." Order at 2. That finding is clearly erroneous. Petitioner did cite legal authority that would permit such review. Mot. at 14.

These clearly erroneous findings—repeated verbatim from an order in a different case—made without the benefit of a response from the State (a process identical to the other case), make this an appropriate case for reconsideration.

### D. NO LEGAL SUPPORT FOR DENYING THE MOTION

On de novo review of the Order's legal conclusions, reconsideration is appropriate. As shown above, the Order clearly errs in finding Petitioner failed to provide "any existing legal authority." Order at 2. However, it is true the Order itself cites no rule, statute or case that informed the Magistrate Judge's decision. Even a discretionary decision must be informed by some consideration besides the length of the chancellor's foot. *See Lonchar v. Thomas*, 517 U.S. 314, 323 (1996) (rejecting restriction on habeas review "as arbitrary and uncertain as measuring distance by the length of each chancellor's foot"). When considering whether to stay proceedings, courts "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-255. The Order's erroneous factual findings and quick decision without input from the State show the Magistrate Judge did not weigh Petitioner's interests or attempt to achieve a balance between them and the State's.

As the Supreme Court has said, "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256. Petitioner's case presented just such circumstances. The pandemic is a circumstance of extraordinary public moment. The Magistrate Judge had no basis for determining whether the delay Petitioner seeks is oppressive, having not heard from the State. In any event, the Order reflects no consideration of how the State would be impacted. There can be no doubt that the public welfare is promoted by Petitioner's counsel not violating the recommendations of epidemiologists—the very public health officials that Respondent has relied upon to close the prison—and avoiding actions that could prolong the pandemic. Yet, again, the Order reflects no concern with the public welfare.

The Magistrate Judge's Order suggests that the Petitioner must conduct his investigation in a certain manner in order to obtain the relief he seeks regardless of its effects on the public welfare. However, the Order fails to provide any legal basis for this suggestion; it is simply arbitrary.

7

For example, despite Petitioner not requesting a finding of equitable tolling in his Motion, the Order proceeded to make findings as to such relief. Order at 2. Again, without reference to any rule, statute or case, the Order concluded that Petitioner alleged "no facts showing that there exists facts sufficient to warrant a finding of equitable tolling." *Id.*

First, the Order finds that "Petitioner had between September 2019 and March 2020 to fully investigate the facts surrounding his federal habeas case through in-person interviews." Order at 2. In addition to being clearly erroneous, because counsel were not appointed until October 23, 2019,[3] this finding ignores Congress's judgment that Petitioner should have one year in which to investigate and present his claims. 28 U.S.C. § 2244(d). The finding also rests on assumptions that are totally unsupported by the record. The Order assumes, contrary to Congress's judgment, and without any analysis of the record in this case, that the period in question represents a reasonable or sufficient time. Among the things the Order fails to take into account are (1) the length of the trial record; (2) the length and content of the direct appeal briefs and opinion; (3) whether the state court found error or failures to preserve error in the record; (4) the number of issues raised in the state habeas petition, their complexity, or the extent of their reliance on extra-record evidence; (5) the length of the habeas courts findings and conclusions; (6) the state court's ruling on the state habeas petition, its length and complexity, and whether it found any claims defaulted; (7) whether there was evidentiary hearing in state habeas court, and if so, the size of the record it produced; (8) how much time it took federal habeas counsel to assemble the record, and the extra-record evidence the Supreme Court has found necessary to identify habeas issues like ineffective assistance of counsel. All of these factors are obvious and routinely considered by federal habeas courts, for example, when

---

[3] Congress has determined that Petitioner has the right to counsel and investigative services in pursuit of relief. 18 U.S.C. §§ 3599(a) & (f). Counsel were not appointed until October 23, 2019. ECF No. 9.

8

budgeting. If the State had been permitted to file a response, and made an issue of the period between September 2019 and March 2020, Petitioner would have had notice and an opportunity to respond by way of reply. The Magistrate Judge's decision denied Petitioner such notice. In the absence of such considerations, the conclusion is arbitrary and capricious.

The Order continued to find that "Petitioner's legal and investigative staff have not been prevented since March 2020 from investigating his claims via the telephone or other means of communication still operative at this juncture, including first class postage transmitted via the United States Postal Service." *Id.* The Motion explained why investigation by mail is not feasible. *See* Mot. at 9-13. But the assumption that anyone could investigate a capital case through the mail is arbitrary and capricious. If that were possible, Congress would have no reason to guarantee capital habeas petitioners counsel and expert and investigative services. *See* 18 U.S.C. § 3599(a) and (f). Petitioners could simply mail questions to witnesses from their prison cells.

This Magistrate Judge also assumed that counsel could have gathered and read the record and all extra-record evidence from the files of prior counsel, analyzed it for potential issues, identified witnesses, located them, and conducted *and completed* in-person interviews within the five months following appointment. Again, this factual assumption is contrary to Congressional intent, and was made independent of any consideration of the actual circumstances of this case.

Indeed, the ruling is contrary to the Magistrate Judge's prior *two* rulings extending the time for Petitioner to file his petition to the congressionally mandated end of the limitations period. *See* ECF Nos. 24 & 26. The second of Petitioner's motions was unopposed. ECF No. 25.

The Order is contrary to law. To do as the Order suggests would require counsel to ignore the professional standards of practice and representation in capital cases as set forth in the ABA Guidelines, and as noted in Petitioner's Motion. *See* Mot. at 9-13. Yet, this Court's Criminal Justice Act ("CJA") Plan provides that, "Attorneys appointed under the CJA must conform to the highest

9

standards of professional conduct, including but not limited to, the Texas Disciplinary Rules of Professional Conduct and requirements of the court's local rules." UItnited States District Court for the Northern District of Texas Criminal Justice Act Plan ("Plan") Section XI.A.1. The Plan gives preference to the Federal Public Defender for the Northern District of Texas ("FPD") for appointment in capital habeas cases, Section XIV.F.2, and also requires that the FPD "must" perform according to the highest professional standards. Section VII.B. The section on capital cases acknowledges their "complex and demanding nature," and accordingly provides that courts should consider consulting resource counsel "are death penalty experts who may be relied upon by the court for assistance with ... legal, practical, and other matters arising in federal capital cases." Section XIV.B.4. *See also* Section XIV.F.7 and 8 (requiring that capital habeas counsel "have distinguished prior experience in capital [Section] 2254 representations"). Finally, the Plan provides that "[i]n evaluating the qualifications of proposed capital § 2254 counsel, the judge may consider the qualification standards endorsed by bar associations and other legal organizations regarding the quality of legal representation in capital cases." Section XIV.F.9.

Clearly, the Court places a high value on standards endorsed by the Texas bar and other bar organizations when appointing counsel. Yet, here the Order appears to fault counsel for failing to ignore those same standards in the actual performance of their duties.[4]

---

[4] Courts have noted that conducting mitigation investigations by phone can result in a finding of ineffective assistance of counsel. *See Eaton v. Wilson*, No. 09-cv-261, 2014 WL 6622512, at *83 (D. Wyo. Nov. 20, 2014) ("Any attempt to interview a family member over the telephone about the subjects which must be broached in the investigation of a capital case invites failure."); *Harries v. Bell*, 417 F.3d 631, 638 (6th Cir. 2005) (concluding that "counsel failed to conduct a constitutionally adequate investigation" in part because counsel "limited their investigation to contacting by telephone Harries's mother and brother"); *Ferrell v. Hall*, 640 F.3d 1199, 1219 n. 14 & 1229 (11th Cir. 2011) (finding counsel ineffective at the penalty phase where, in part, "many" of the mitigation interviews "were conducted not in person but by telephone"); *Doe v. Ayers*, 782 F.3d 425, 438-39 (9th Cir. 2015) (finding ineffective assistance where trial counsel conducted interviews by telephone rather than in person, and where the few in person interviews conducted were in the presence of family and friends); *Correll v. v. Ryan*, 539 F.3d 938, 945 (9th Cir. 2008)

The Order relies on clearly erroneous findings and assumptions, and is contrary to the policies enacted by Congress and this Court while resting on no articulated standard. It should be reconsidered and set aside.

### III. Conclusion

For the foregoing reasons, this Court should set aside the Magistrate Judge's Order and enter an Order granting Petitioner's Motion.

DATED:  October 1, 2020        Respectfully submitted,

                               MAUREEN FRANCO
                               FEDERAL PUBLIC DEFENDER


                               */s/ Timothy P. Gumkowski*
                               Timothy P. Gumkowski
                               Texas Bar No. 24104788
                               Assistant Federal Defender
                               Office of the Federal Public Defender
                               Capital Habeas Unit
                               919 Congress, Suite 950
                               Austin, Texas 78701
                               737-207-3007 (tel.)
                               512-499-1584 (fax)
                               Tim_gumkowski@fd.org

                               *Counsel for Petitioner Micah Crofford Brown*

---

(noting that "counsel testified that he met only once with defendant's father, sister, and brother, 'around the kitchen table at the same time,'" and concluding that those interviews were "worthless"). *See also Brown v. Thaler,* 684 F.3d 482, 488 (5th Cir. 2012) (noting, without disapproval, an investigator's professional opinion that "interviews [for a postconviction investigation] must be conducted in person rather than by telephone so that trust and rapport between the investigator and witnesses can be developed" and that "repeat interviews were necessary in order to obtain affidavits.").

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October, 2020, I electronically filed the foregoing Objections with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Erich Dryden
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400 (tel.)
(512) 320-8132 (fax)
erich.dryden.oag.texas.gov

*/s/ Timothy Gumkowski*
Timothy Gumkowski
