IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**MICAH CROFFORD BROWN,**        §
                                 §
        Petitioner,              §
                                 §
v.                               §        Civil Action No. **3:19-CV-2301-L-BN**
                                 §
**BOBBY LUMPKIN,** Director,     §
Department of Criminal Justice,  §
Correctional Institutions Division, §
                                 §
        Respondent.              §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Petitioner's Objections to the Magistrate Judge's Order ("Objections") (Doc. 32), filed October 1, 2020; Petitioner's Amended Objections to Magistrate Judge's Order ("Amended Objections") (Doc. 42), filed May 14, 2021; and the Motion for Leave to File and Brief of Amicus Curiae, National Association of Criminal Defense Lawyers, In Support of Petitioner's Objections to Magistrate Judge's Order (Doc. 33), filed November 4, 2020. Petitioner Micah Crofford Brown ("Petitioner" or "Mr. Brown") objects to and seeks reconsideration of the magistrate judge's September 17, 2020 Order (Doc. 31) that denied his earlier Motion to Modify or Suspend Scheduling Order Due to Extraordinary Circumstances ("Motion") (Doc. 30), which was opposed by Respondent Bobby Lumpkin ("Respondent" or "the State") and denied before expiration of the State's deadline to file a response. Petitioner contends that the court should set aside the magistrate judge's order and grant his Motion to give him additional time to complete

his investigation and file an amended habeas petition.   The State did not file a response to Petitioner's Objections or Amended Objections and the deadline for doing so has passed.

Having considered the Motion, the magistrate judge's order to which objection was made, the record in this case, and Petitioner's timely Objections (Doc. 32), the court determines that the magistrate judge's denial of the Motion is not clearly erroneous or contrary to law in any material respect.  The court, therefore, **affirms, as supplemented by this opinion,** the magistrate judge's September 17, 2020 Order; and **overrules** Petitioner's Objections (Doc. 32). The court **strikes** Petitioner's Amended Objections (Doc. 42), which were filed without leave of court, and long after the fourteen-day deadline for filing objections expired.  The court's determination regarding Petitioner's Objections moots the arguments that the National Association of Criminal Defense Lawyers seeks leave to assert.  The court, therefore, **denies as moot** its Motion for Leave to File and Brief of Amicus Curiae (Doc. 33).

## I.     Factual and Procedural Background

In May 2013, a Hunt County, Texas jury found Mr. Brown guilty of murdering his ex-wife Stella "Doc" Ray in July 2011.  On June 3, 2013, the trial court sentenced Mr. Brown to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence, and Mr. Brown's application for state habeas corpus relief was denied on September 11, 2019.  *See Brown v. State*, AP-77,019, 2015 WL 5453765 (Tex. Crim. App. Sept. 16, 2015); *Ex parte Micah Crofford Brown*, WR-85,341-01, 2019 WL 4317041 (Tex. Crim. App. Sept. 11, 2019).

This federal habeas proceeding, brought pursuant to 28 U.S.C. § 2254, followed with Petitioner's state habeas counsel filing a motion on September 27, 2019, requesting appointment of qualified counsel to represent Mr. Brown in his challenge of the capital murder conviction and death sentence.  On October 23, 2019, the motion was granted by the magistrate judge (Doc. 9).

The magistrate judge's October 23, 20219 Order required: (1) Petitioner to file his federal habeas corpus petition by May 1, 2020; and (2) Respondent to file an answer or responsive pleading on or before ninety days after receipt of the habeas petition.  The order also required all materials filed in this case to conform with this district's Local Civil Rules and made clear that:

> [a]ny party seeking an extension on any of the foregoing deadlines shall file a written motion requesting such extension *prior* to the expiration of the deadline in question and shall set forth . . . a detailed description of the reasons why that party, **despite the exercise of due diligence**, will be unable to comply with the applicable deadline.

Oct. 23, 2019 Order ¶ 10 (Doc. 9) (emphasis added).  No deadline for filing an amended petition was included in this or any of the magistrate judge's orders.

Appointed attorney Timothy Patrick Gumkowski filed an initial appearance on behalf of Mr. Brown on October 30, 2019 (Doc. 10). On November 12, 2019, Mr. Brown, through his newly appointed counsel, filed Objections to the magistrate judge's October 23, 2019 Order, contending that: (1) the requirement that he file his habeas petition on May 1, 2020, before the September 11, 2020 statutory deadline was arbitrary and capricious; and (2) the requirement "[m]andating conformity to the Local Rules regarding page limits for [his] capital habeas petition at this point could compromise his right to representation." Pet'r Obj. 4-9 (Doc. 14).

These untimely objections, which were filed six days after the fourteen-day deadline for objecting to the magistrate judge's rulings on nondispositive matters, were overruled by the court on December 20, 2019 (Doc. 20).  The court advised Petitioner that, if, at any time, he wished to seek a continuance of the pleading deadline set by the magistrate judge or wanted to exceed the page limit provided in this district's Local Civil Rules, he could file an appropriate motion beforehand that conformed with the Federal Rules of Civil Procedure and this district's Local Civil Rules. The court further advised: "That this is a habeas death penalty case does not relieve

Petitioner of complying with these rules or other applicable legal authority." Dec. 20, 2019 Order (Doc. 20).

On March 23, 2020, Mr. Brown filed his first motion to extend the May 1, 2020 deadline for filing his habeas petition to September 11, 2020, the one-year statutory deadline. Alternatively, Petitioner requested an extension of sixty days. Citing the COVID-19 Pandemic, Petitioner contended there was good cause for the requested continuance, which was needed for his attorneys to "comply with their obligations to investigate and present all meritorious issues in [his] petition." Pet'r Mot. to Reset Deadline 1 (Doc. 22). Petitioner asserted that the Pandemic made any deadline, short of the one-year statutory deadline, impracticable because it had stymied his legal team's ability to conduct the required factual and mitigation investigation of his case. Petitioner further asserted that the American Bar Association ("ABA") Guidelines applicable to legal representation in death penalty cases required his habeas legal team to conduct "in-person, face-to-face, one-on-one interviews" with him, his family, and other witnesses, and the Pandemic had prevented his attorneys from conducting in-person interviews. *Id.* at 5. Petitioner, nevertheless, asserted that, "[e]ven without the global pandemic, [he] would be asking that the truncated filing date be reset or continued" because his deadline for filing his habeas petition should be consistent with that set by Congress, which in this case fell on September 11, 2020. *Id.* at 8 & n.1.

On April 17, 2020, the magistrate judge denied Petitioner's request to have his filing deadline continued to the September 11, 2020 statutory deadline, explaining that nothing in the text or legislative history of The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires a district court "to set the final day of the AEDPA's statutory limitations period as the deadline for filing a federal habeas corpus petition." Apr. 17, 2020 Order 2 (Doc. 24). The magistrate judge expressed concern that extending Petitioner's deadline to file his habeas petition

**Memorandum Opinion and Order – Page 4**

"to the final day of the AEDPA's limitations period could have the unintended effect of preventing the filing of a timely amended federal habeas corpus petition in the event [that] the Respondent's answer asserts facts that transform a claim that Petitioner asserts in his original petition." *Id.* The magistrate judge also noted that Petitioner had not identified: (1) "any new claim or any new evidence that he ha[d] been unable to develop, despite the exercise of due diligence on his part, since the [issuance of the] October 23, 2019 scheduling order"; or (2) any claim or evidence that was not presented and fully litigated in his state court proceedings that he intended to include in his original federal habeas corpus petition or develop for purposes of this proceeding. *Id.* The magistrate judge, nevertheless, granted Petitioner's alternative request for a 60-day extension and continued his deadline to file his habeas petition to July 1, 2020.

Less than two months later on June 9, 2020, Petitioner moved again, citing the COVID-19 Pandemic, to extend the deadline for filing his habeas petition to September 11, 2020, which was unopposed by Respondent and granted on June 10, 2020. *See* Docs. 25, 26. As before, the magistrate judge advised regarding extensions of time that:

> [a]ny motions requesting extensions on any of the foregoing deadlines must be filed prior to the expiration of the deadline in question and must set forth in such motion a detailed description of the reasons why that party, **despite the exercise of due diligence**, will be unable to comply with the applicable deadline.

June 10, 2020 Order 4 (Doc. 26) (emphasis added). On September 3, 2020, Petitioner moved for leave to exceed the page limit for his habeas petition, which was also granted on September 9, 2020. Petitioner then proceeded to file his 170-page habeas petition and approximately seventy pages of exhibits on September 11, 2020, the statutory deadline.

A few minutes later, Petitioner filed his Motion (Doc. 30) in which he requested that the magistrate judge "modify or suspend the scheduling order to provide him a reasonable time to amend his Petition after [the] limitations on [his] investigation [that were caused by the COVID-

19 Pandemic] are lifted and before the State is required to answer."  Pet'r Mot. 1 (Doc. 30).[1]

Petitioner asserted that he needed additional time to file an amended petition because, although his

initial habeas petition ("Petition") was filed timely, it was filed "under extraordinary

circumstances" caused by the COVID-19 Pandemic that "prevented his counsel from completing

the diligent investigation they began before the nation, state, and city-wide attempts to stem the

spread of COVID-19" went into effect on or about March 13, 2020.  *Id.* Petitioner further asserted

that a continuance was appropriate because it *might* lead to new evidence and claims:

> The evidence developed through that further investigation—when it is
> possible—*may* support (1) allegations timely raised in the Petition, (2) new
> allegations that, pursuant to Fed. R. Civ. P. 15(c)(1), relate back to a claim timely
> raised in the Petition, (3) new allegations or claims that do not relate back but for
> which [he] is entitled to equitable tolling under *Holland v. Florida*, 560 U.S. 631,
> 649 (2005). Or, the evidence *may* form (4) the factual predicate for a new claim or
> claims that could not have been discovered earlier, and that therefore will be timely
> under 28 U.S.C. § 2244(d)(1)(D) if filed within one year of the restrictions being
> lifted. *No one can know for certain what evidence is out of reach* due to the
> limitations imposed by efforts to slow the spread of the disease. But the
> investigation so far points to additional, favorable evidence that is inaccessible
> through the exercise of due diligence.

Pet'r Br. 2 (Doc. 30) (emphasis added).

Petitioner indicated that he was seeking a continuance of 182 or 183 days[2] to complete his

investigation and file an amended habeas petition as a matter of course, pursuant to Federal Rule

of Civil Procedure 15(a)(1)(B), before the State filed its answer.  *Id.* at 14-15.  He argued that the

---

[1] In support of his Motion, Petitioner submitted: (1) the declaration of his lead attorney regarding the habeas legal team's efforts to investigate potential claims; (2) the declaration of Elizabeth Vartkessian, Ph.D regarding the effects of COVID-19 Pandemic generally on mitigation investigations in capital cases; and (3) the declaration of Emily Olson-Gault, Esq., the Director and Chief Counsel of the ABA Death Penalty Representation Project, regarding the ABA Guidelines and Supplementary Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases.

[2] On page two of his Brief, Petitioner asserts that 182 days is a reasonable extension given the amount of time he allegedly lost to investigate potential claims because of the Pandemic.  On pages three and fifteen of his Brief, he asserts that 183 days is a reasonable extension. Because he argues in his Objections that he sought a 182-day continuance in his Motion, the court assumes that this is what he intended to say in the Brief filed in support of his Motion.

**Memorandum Opinion and Order – Page 6**

length of the requested continuance was reasonable because it was the amount of time between March and September 2020 that he was unable, as a result of COVID-19 restrictions, from diligently investigating potential claims.  On page two of the brief ("Brief") to his Motion (Doc. 30), he indicated that the 183 days needed to complete his investigation and file an amended petition would run from the time "after [COVID-19] restrictions and limitations are lifted."  *Id.* at 3; Pet'r Mot. 1.  On pages fourteen and fifteen of his Motion, however, he indicated that the 183 days to file an amended petition would not commence until "after conditions reopen *and* he can complete his investigation."  Pet'r Br. 15 (emphasis added); *see also id*. at 14 ("When conditions are lifted *and* the investigation can be completed, Mr. Brown reasonably expects to file an amended petition that will contain new allegations, and potentially new claims.") (emphasis added)).

Alternatively, Petitioner requested that the court stay the proceedings in this case "to account for the ongoing effects of COVID-19."  *Id.* at 2.  Unlike the requested continuance, no specific amount of time was articulated in Petitioner's Motion or supporting brief for the proposed stay.  Petitioner, instead, implied that the stay would commence on September 11, 2020, upon the filing of his Petition, remain in place until COVID-19 restrictions were lifted, and, in the meantime, the parties could provide the court with "regular advisories."  *Id.* at 2, 15, 16; *see also* Pet'r Mot. 1.

In Petitioner's view, proceeding in this manner would: (1) be more equitable, efficient, and avoid multiple filings, including the need for the State to file a second answer; and (2) give the parties and the court "the best opportunity to assess, based on all the facts, the timeliness . . . of any new allegations or claims" in his amended petition.  Petitioner anticipated that, if further amendment was necessary at some later point, he "could then seek leave to amend a second time"

with consent of the State or leave of the court under Rule 15(a)(2), which he contended should be freely given "when justice so requires."  Pet'r Br. 15 (quoting Fed. R. Civ. P. 15(a)(2)).

On September 17, 2020, the magistrate judge denied Petitioner's Motion as follows:

> Petitioner has filed an opposed motion for an indefinite stay of proceedings in this case. *See* Dkt. No. 30. Petitioner cites to the on-going COVID-19 pandemic to justify request[]ing an open-ended extension of time within which to file an amended petition.

> Petitioner does not allege any specific facts showing that (1) he can identify any specific claim or potential claim that he was unable, despite the exercise of due diligence, to fully investigate prior to filing his initial petition on September 11, 2020; (2) he was unable, despite the exercise of due diligence, to communicate adequately via the United States Postal Service, the telephone, or other available electronic methods of communication, with any identified individual concerning any such potential claim; (3) he was unable, despite the exercise of due diligence, to obtain access to any identified document relevant to a potential claim prior to filing his initial petition on September 11, 2020; (4) any member of Petitioner's legal or investigative staff has been diagnosed with the COVID-19 virus; (5) any identified person with whom he or his legal or investigative staff have attempted to communicate has been diagnosed with the Covid-19 virus; (6) any existing legal authority that authorizes this Court to extend the statutory deadline for the filing of Petitioner's initial petition beyond September 11, 2020; or (7) any existing legal authority that authorizes this Court to address the merits of a claim included in an amended petition filed after September 11, 2020 that does not relate back to a claim contained in Petitioner's initial petition.

> And Petitioner alleges no facts showing that there exist facts sufficient to warrant a finding of equitable tolling as to any potential new claim that does not relate back to the claims included in his initial petition. Assuming the factual accuracy of Petitioner's affidavits accompanying his motion for indefinite stay, Petitioner had between September 2019 and March 2020 to fully investigate the facts surrounding his federal habeas case through in-person interviews. Petitioner's legal and investigative staff have not been prevented since March 2020 from investigating his claims via the telephone or other means of communication still operative at this juncture, including first class postage transmitted via the United States Postal Service.

Sept. 17, 2020 Order 1-2 (Doc. 31).

On October 1, 2020, Petitioner filed seventeen pages of Objections to the magistrate judge's September 17, 2020 Order.  Pet'r Obj. (Doc. 32).  After the State filed its response to the

habeas petition on May 7, 2021, contending that Petitioner's claims are unexhausted, procedurally defaulted, or meritless, Petitioner, without seeking or obtaining leave of court, filed Amended Objections on May 14, 2021, to the magistrate judge's September 17, 2020 Order. Pet'r Am. Obj. (Doc. 42). No response to the Objections or Amended Objections was filed by the State. Petitioner also moved for and was granted two continuances to file his reply brief, making his reply due July 26, 2021, a little more than ten months or 318 days after he filed his Petition.

## II.     Standard of Review

A magistrate judge has authority to decide nondispositive pretrial motions like Petitioner's Motion. *See* 28 U.S.C. § 636(b)(1)(A); *see also* Rule 10 of the Rules Governing Section 2254 Cases ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636."). Objections to a ruling on a nondispositive matter are due fourteen days after a party is served with a copy of the magistrate judge's order. Fed. R. Civ. P. 72(a). "A party may not assign as error a defect in the order not timely objected to." *Id.* A district court may modify or set aside a magistrate judge's ruling on a nondispositive motion only if it is "clearly erroneous or contrary to law." *Id.*; 28 U.S.C. § 636(b)(1)(A); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir.1995). The "clearly erroneous" standard applies to the magistrate judge's factual determinations. *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994). A magistrate judge's determination is "clearly erroneous" when, "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 481 (N.D. Tex. 2001) (internal citation omitted). The

"contrary to law" standard applies to the magistrate judge's legal conclusions. *Smith*, 154 F.R.D. at 665. The district court reviews a magistrate judge's legal conclusions de novo. *Id.*

## III.   Applicable Law

This section 2254 habeas action is governed by AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997) (holding that the AEDPA governs petitions filed after April 24, 1996).  The AEDPA was enacted to advance the finality of state court criminal judgments and streamline federal habeas proceedings.  *Mayle v. Felix*, 545 U.S. 644, 662 (2005); *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) ("Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases").  To accomplish this purpose, the statute has a strict one-year statute of limitations period for filing a federal habeas petition.[3]  *Felix*, 545

---

[3] Regarding this one-year limitation period, 28 U.S.C. § 2244(d) provides:

>   (d)(l) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.
>
>   28 U.S.C. §§ 2244(d)(1)-(2).

U.S. at 662 (citing 28 U.S.C. § 2244(d)(1)(A)); *Rhines v. Weber*, 544 U.S. 269, 276 (2005) (citation omitted).

The AEDPA also left intact the prior requirement that federal habeas review is limited to review of exhausted claims. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]"). Thus, "[u]nder the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also* § 2254(b)(1)(A). Except for certain narrow exceptions, federal courts cannot consider a habeas claim or new evidence relevant to the claim if the claim was not exhausted in state court. The exhaustion requirement, therefore, reserves to state courts the opportunity, in the first instance, to decide factual disputes relevant to a state prisoner's claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

The exhaustion requirement is "complement[ed] by § 2254(d)'s limitations. *Harrington*, 562 U.S. at 103. Under § 2254(d), a claim adjudicated on the merits in state court may not be relitigated in federal habeas court unless it is: (1) contrary to federal law then clearly established in the holdings of the Supreme Court or involved an unreasonable application of such law; or (2) based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Harrington*, 562 U.S. at 100. "This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim

on the merits," and "[i]t would be contrary to [§ 2254's exhaustion requirement and] purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*." *Id.* at 181-82.

The enactment of the AEDPA did not deprive district courts of the authority to issue stays when doing so would be an appropriate exercise of discretion. *Rhines*, 544 U.S. at 276 (examining stay and abeyance in the context of claims exhaustion and citing *Landis v. North Am. Co.*, 299 U.S. 248 (1936); and *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). Staying a federal habeas petition, however, frustrates the AEDPA's finality objective when petitioners are allowed to drag out indefinitely their federal habeas review. *Rhines*, 544 U.S. at 277-78. This is particularly true in the case of capital petitioners who have more incentive to "deliberately engage in dilatory tactics to prolong their incarceration and avoid execution." *Id.* Thus, any decision to issue a stay should be limited in time and weighed against the statute's timeliness concerns and "goal of streamlining federal habeas proceedings." *Id.* at 277. Even when a stay is appropriate, a district court's discretion in structuring the stay is limited by the AEDPA's timeliness concerns such that the stay of habeas case or petition should not be stayed indefinitely. *Id.*

In this case, Petitioner requested to modify and further extend the unexpired filing deadlines in the magistrate judge's June 10, 2020 order (the State's response deadline and his reply deadline) or stay the proceedings in this case for the purpose of delaying the State's response to give him additional time to file an amended habeas petition, initially as a matter of course under Rule 15(a)(1), and possibly again at some later time under Rule 15(a)(2) with consent of the State or court approval. A petition for writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. In addition,

**Memorandum Opinion and Order – Page 12**

Federal Rule of Civil Procedure 81 and Rule 12 of the Rules Governing Section 2254 Cases provide that the Federal Rules of Civil Procedure apply in habeas proceedings unless inconsistent with any habeas statutory provisions or the Rules Governing Section 2254 Cases. *See* R. 12 of the Rules Governing Section 2254 Cases for the United States District Courts ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."); Fed. R. Civ. P. 81(a)(2) (explaining that the Federal Rules of Civil Procedure "are applicable to proceedings for . . . habeas corpus."); *see also United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (concluding that Federal Rule of Civil Procedure 15 applies to federal habeas proceedings).

Thus, a petitioner may amend a section 2254 petition under Federal Rule of Civil Procedure 15. *Id.* Under Rule 15(a), a party may amend his pleadings once as a matter of course, without court approval or consent of the opposing party, at any time before a responsive pleading is served. Fed. R. Civ. P. 15(a). Under Rule 15(a)(2), a party may amend only with consent of the opposing party or with leave of the court. Fed. R. Civ. P. 15(a)(2). While Rule 15(a)(2) provides that the "court should freely give leave when justice so requires," this provision is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted). When the proposed amendment would be futile, denial of the

motion for leave to amend is appropriate. *See Foman*, 371 U.S. at 182; *Stripling v. Jordan Prod. Co., LLC*, 234 F. 3d 863, 873 (5th Cir. 2000). This is so because the "liberal amendment rules of [Rule] 15(a) do not require that courts indulge in futile gestures. Whe[n] a complaint, as amended, would be subject to dismissal, leave to amend need not be granted." *DeLoach v. Woodley*, 405 F. 2d 496, 496-97 (5th Cir. 1968).  An amendment is futile when the additional ground for review would be subject to dismissal under Rule 12(b)(6).  *Stripling*, 234 F.3d at 873.

Any amended section 2254 petition filed after the AEDPA's one-year statute of limitations must relate back to the date of the original petition in accordance with Rule 15(c)(2).  *Felix*, 545 U.S. at 664; *United States v. Gonzalez*, 592 F.3d 675, 678-79 (5th Cir. 2009). "An Amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Amendments "do not relate back if they assert 'a new ground for relief supported by facts that differ in both time and type from those in the original pleading.'" *Gonzalez*, 592 F.3d at 679 (quoting *Felix*, 545 U.S. at 650).

The AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled. *Holland*, 560 U.S. at 645; *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 2000). The doctrine of equitable tolling applies when a petitioner is actively misled or external factors prevent a petitioner in some extraordinary way from asserting his rights. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).  A habeas petitioner is entitled to equitable tolling "only if he shows that: (1) 'he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Holland*,

560 U.S. at 653.  The decision whether to grant or deny equitable tolling is left to the discretion of district courts and requires district courts to "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).  The court's "review under 28 U.S.C. § 2254(d)(1) is limited to the record in the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

## IV.    Analysis

### A.    Petitioner's Amended Objections (Doc. 42)

As noted, objections by a party to an order regarding a nondispositive pretrial matter must be filed within fourteen days of being served with a copy of the order.  Fed. R. Civ. P. 72(a). The order at issue was entered on September 17, 2020.  While Petitioner's original Objections were filed timely, his Amended Objections were not filed until May 14, 2021, several months after issuance of the magistrate judge's order and the fourteen-day deadline for filing objections under Rule 72(a).  Moreover, leave to file the untimely Amended Objections was not sought or granted, and good cause for the failure to file the objections within the time allowed by Rule 72(a) has not been shown by Petitioner.  The court also previously warned Petitioner about the consequences of filing untimely objections to the magistrate judge's orders.   The court, therefore, **strikes** Petitioner's Amended Objections and does not consider them in ruling on his original Objections to the magistrate judge's order.  Even if considered, the Amended Objections would not affect the court's decision to affirm the magistrate judge's order denying Petitioner's Motion. [4]

---

[4] Petitioner's Amended Objections simply "renew[]" many of the same conclusory and speculative assertions contained in his original Objections.  Pet'r Am. Obj. 14. Petitioner also contends that, because the undersigned did not review and rule on his Objections before the State responded to his Petition, he has not received the benefit of the judicial review contemplated under 28 U.S.C. § 636(b)(1)(A), and the deadlines for filing an amended petition as a matter of right under Rule 15(a) and reply brief have been triggered.  Based on *Peretz v. United States*, 501 U.S. 923, 929 & n.6 (1991), he, therefore, "invokes his 'personal right to an Article III adjudicator,'" arguing that "[r]eview and a ruling [on his Objections] are critical so that [he] receives individualized consideration." *Id.* at 15.  As proof that his

### B.      Petitioner's Objections (Doc. 32)

Petitioner contends in his initial Objections that the magistrate judge's order denying his Motion is clearly erroneous and contrary to law.  The court disagrees and **overrules** Petitioner's Objections for the reasons herein explained.

### 1.      Alleged Factual Inaccuracies

Petitioner contends that the magistrate judge's denial of his Motion is clearly erroneous because it is based on several alleged factual inaccuracies and an alleged procedural error in handling his Motion.   Among other things, Petitioner asserts that the magistrate judge misunderstood and overlooked certain aspects of his Motion pertaining to: (1) the length of the stay sought; (2) the legal authority relied on by him to support the requested stay; (3) the claims or potential claims warranting a stay on equitable grounds; and (4) his diligence in pursuing his rights.   In addition, Petitioner contends that the magistrate judge erred in ruling on his Motion

---

case has not received individualized attention, Petitioner asserts in his Amended Objections, based on reasoning included in his original Objections, that the magistrate judge's September 17, 2020 Order in this case is very similar to an order entered in another capital habeas case in the Dallas Division of the Northern District of Texas.

While the court did not immediately rule on Petitioner's Objections after they were filed, it did review them shortly after they were filed and determined they were without merit for the reasons explained in detail in this memorandum opinion and order.   Additionally, because of the lack of clarity and inconsistencies in his Objections, Motion, supporting Brief, and evidence, it took the court some time to wade through the morass and thoroughly address the large number of arguments in Petitioner's Objections, many of which mischaracterize the magistrate judge's order; Petitioner's Brief and evidence; and the cases cited in his Brief and Objections. Petitioner's citation to and mischaracterization of *Peretz* in his Amended Objections is one such example of his counsel's lack of complete candor with the court, which is a duty of all attorneys who appear before the court, not just capital habeas attorneys.  Unlike Mr. Brown's habeas case, which is civil in nature, *Peretz* is a criminal case. As with the criminal case it discusses, *Peretz* concerned the importance of a criminal defendant's constitutional right to demand that an Article III judge preside over every critical stage of a felony trial, while at the same recognizing the important and indispensable role of magistrate judges "to an efficient federal court system," particularly "[g]iven the bloated dockets that district courts have now come to expect as ordinary."   *Peretz*, 501 U.S. at 927-29 (quoting and discussing the policy concerns raised in *Gomez v. United States*, 490 U.S. 858 (1989), which involved the narrow issue of whether a magistrate judge "'exceeds his jurisdiction' by selecting a jury 'despite the [criminal] defendant's objection.'").  Petitioner chides the court for taking too long to rule on his Objections while at the same time contending that the magistrate judge ruled too quickly without conducting a thorough analysis of the arguments and legal authority included in his Motion. As evidenced by the length of this opinion, however, thorough analysis of Petitioner's Motion, Objections, evidence, and legal authority required considerable time and effort on the court's part to thoughtfully and painstakingly address the numerous arguments asserted by Mr. Brown.

**Memorandum Opinion and Order – Page 16**

before Respondent was permitted to file a response.  The court addresses each of these objections in turn.  To avoid any similar contentions by Petitioner that the undersigned misunderstood or overlooked certain objections, the court quotes each of his objections regarding alleged factual inaccuracies in addressing them.

a.      *Indefiniteness of Requested Extension or Alternative Stay*

Regarding this objection, Petitioner contends:

> The Order states that Petitioner requested "an open-ended extension of time within which to file an amended petition." Order at 1. This is not accurate. Petitioner's Motion clearly requested a 182-day period of time that would begin with a specific event. *See* Mot. at 1-2. Petitioner sought a "reasonable time," after the limitations on investigations were lifted, to complete his investigation and file an amended petition. Petitioner contended that, in this case, a "reasonable time" would be 182 days, and set forth the reasons why such time was reasonable. *Id.* This specific request and reasoning were either overlooked or misunderstood in the Order.

> *That the start date of the period Petitioner requested is unknown*, does not make his request open-ended. *The uncertainty of Petitioner's request for relief lies in the starting point for making the calculation: when the Governor will lift the emergency declaration. Petitioner has no way of knowing precisely when the limitations on his investigation will be lifted, such as when his counsel and retained experts will be permitted to visit the prison where Petitioner is held.*

> To the extent Petitioner sought alternative relief in the form of a stay of the proceedings, the Order describes this request as a "motion for an indefinite stay." Order at 1, 2. While Petitioner did not repeat the precise amount of time (182 days) that he requested in his primary request for relief, it is reasonable to read his request for "a stay of these proceedings to account for the ongoing effects of COVID-19," as incorporating the same time requested in the preceding paragraph. Mot. at 15. And, even if Petitioner's requests were fairly described as "open-ended," or for an "indefinite stay," this would not seem to be a reasonable basis for denying the motion. Certainly, the Order provided no legal authority to support such a determination. Court[]s frequently grant stays that could be described as equally "open-ended" in the sense that there is no way of knowing when a state-actor will

take the action necessary to end the stay. Stays pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), are one example.

Pet'r Obj. 4-5 (emphasis added).

Petitioner's concession regarding the uncertainty, at the time he filed his Motion, of when the period for the requested continuance would commence belies his contention that the continuance sought was not for an indefinite period of time or open-ended in nature. Equally problematic is the way in which Petitioner frames what he refers to in his Objections as the "start date" or "specific event" that would trigger the period for the requested continuance to file an amended petition. As noted, Petitioner indicated in his Motion that the deadline for filing his amended petition would run from the time "after restrictions *and* limitations are lifted"[5]; "after conditions reopen *and* he can complete his investigation"[6]; or "[w]hen conditions are lifted *and* the investigation can be completed."[7] Such a start date or triggering event is far too vague, indefinite, and susceptible to subjective interpretation, as it could be construed a number of different ways.

For example, it is unclear what meaning Petitioner attributes to the terms "restrictions" and "limitations." These terms could refer to the date COVID-19 "restrictions" or "limitations" are lifted at the federal or state level (Texas or another state); the date "restrictions" or "limitations" at the facility where Petitioner is incarcerated are lifted; or both. Even more vague, subjective, and indefinite is Petitioner's assertion that his 182-day amendment deadline should run from the time "conditions reopen *and* he can complete his investigation" because any such deadline would

---

[5] Pet'r Br. 3; Pet'r Mot. 1 (emphasis added).

[6] Pet'r Br. 15 (emphasis added).

[7] *Id*. at 14 (emphasis added).

**Memorandum Opinion and Order – Page 18**

allow Petitioner to unilaterally decide when, in his view, "he can complete his investigation." Pet'r Br. 15.

Apparently recognizing the ambiguity in his original request, Petitioner suggests in his Objections that his 182-day amendment deadline would commence "when the Governor . . . lift[s] the emergency declaration." Pet'r Obj. 5. He qualifies this statement, however, by again asserting that his 182-day amendment deadline would not commence until "the limitations on his investigation [are] lifted, such as when his counsel and retained experts [are] permitted to visit the prison where [he] is held." *Id.* Whether Petitioner's reference to prison visitations is intended as the only limitation, the lifting of which would trigger the 182-day amendment deadline, or simply as an example of any number of limitations on Petitioner's investigation that would need to be lifted, is unclear. Petitioner acknowledges in his Amended Objections, though, that the date counsel and retained experts will be able to visit him in person could be delayed for an unknow amount of time because the experts have other cases, and because of the prison backlog in other attorneys wanting to visit with their clients.

Moreover, while Petitioner presented his requested continuance as one that will only be 182 days or approximately six months in duration, in reality, the duration of the continuance would, at a minimum, be closer to one year in length. This is so because, to accomplish Petitioner's stated goal of amending as a matter of course, the court would have had to continue all unexpired deadlines *before* the State filed its response on December 10, 2020. In other words, the requested modification or suspension of the scheduling order would not have been limited to the 182 days Petitioner sought to file an amended petition *after* restrictions or limitations were lifted at some point in the future. The magistrate judge, therefore, correctly determined that Petitioner's requested continuance was too indefinite and open-ended, and denial of Petitioner's Motion on

this ground was appropriate, particularly in light of the other reasons noted in the magistrate judge's order, which the court addresses in more detail below.

Further, the court disagrees with Petitioner's contention that his alternative request for "a stay of these proceedings to account for the ongoing effects of COVID-19" was not similarly indefinite in duration because it can be reasonably construed "as incorporating the same time requested in the preceding paragraph" for the requested continuance. Pet'r Obj. 5 (citing Pet'r Br. 15). As noted, modification or suspension of the scheduling order deadlines would have to occur before the State's December 10, 2020 response deadline and be continued until after restrictions or limitations were lifted at some later point to accomplish Petitioner's stated goal of amending as a matter of course before the State's December 10, 2020 response deadline. According to Petitioner's Motion, a stay of the proceedings, on the other hand, would occur immediately "upon the filing of [his] initial habeas petition" on September 11, 2020. Pet'r Mot. 15. Thus, Petitioner's requested stay, if granted, would have commenced earlier and resulted in an even longer indefinite delay.

Whether viewed as a request for a continuance or a stay of the proceedings in this case, a decision to grant Petitioner's Motion would have frustrated the AEDPA's finality objective by allowing him to "drag out" indefinitely federal review of his state conviction and death sentence. *See Rhines*, 544 U.S. at 277-78. Contrary to Petitioner's assertion, the Supreme Court in *Rhines* did not condone the issuance of open-ended stays. It, instead, cautioned that, even in the limited circumstances when a stay is appropriate, a district court's discretion in structuring the stay is still limited by the AEDPA's timeliness concerns such that the stay of a habeas case or petition should not be stayed indefinitely. *Id.* at 277. Otherwise, according to *Rhines*, the AEDPA's goal of

finality, especially in capital cases, would be frustrated. *Id.* This objection is, therefore, **overruled**.

> b.   *Identification of Claims and Facts Regarding Diligence*

With respect to this objection, Petitioner asserts:

> Among the enumerated bases for denying the Motion, the Magistrate Judge found that: "Petitioner does not allege any specific facts showing that (1) he can identify any specific claim or potential claim that he was unable, despite the exercise of due diligence, to fully investigate prior to filing his initial petition on September 11, 2020." Order at 1. This is clearly erroneous.

> Petitioner alleged that he had identified at least three claims that required expert services, Mot. Ex. 3 ¶ 5, and that two of his retained experts indicated they needed to evaluate Petitioner in person. Mot. at 12. These facts show that Petitioner can identify specific claims or potential claims that he has was unable to fully investigate prior to filing his initial petition. While the prison is closed to visitors, no amount of diligence would allow for these experts to get into the prison to evaluate Petitioner in-person.

> Similarly, the Order stated that Petitioner had not alleged any specific facts showing that: "he was unable, despite the exercise of due diligence, to communicate adequately via the United States Postal Service, the telephone, or other available electronic methods of communication, with any identified individual concerning any such potential claim." Order at 1. Again, the finding is clearly erroneous. Petitioner's Motion described the inability of adequate communications between Petitioner and counsel, and Petitioner and retained experts. Mot. at 11-12.

Pet'r Obj. 5-6 (footnote omitted).

What Petitioner contends are facts are actually *conclusory statements* regarding *potential* evidence that *might* support his existing claims or yet-to-be identified new claims. *See* Pet'r Br. 2, 6, 13-15; *see also* Pet'r Mot. Ex. 3 ¶ 5 (Doc. 30-1). Petitioner points to the declaration of his attorney Mr. Gumkowski to support his objection and contention that he "identified at least three claims that required expert services," and that "[t]hese facts show that [he] can identify specific claims or potential claims that he has was unable to fully investigate prior to filing his initial petition." Pet'r Obj. 5-6. Mr. Gumkowski, though, merely states in conclusory fashion that he

"identified several potentially meritorious claims that require additional investigation." Pet'r Mot. Ex. 3 ¶ 5.  Thus, contrary to Petitioner's assertion, Mr. Gumkowski's declaration does not actually identify any specific claims or potential claims; nor does it include information—such as the basis for any potential claims or why he believes they are potentially meritorious—from which the court can determine whether Petitioner has or will be able to actually identify potentially meritorious claims that he was previously unable to adequately investigate before filing his Petition on September 11, 2020.  Without this information, the forgoing statement in Mr. Gumkowski declaration is conclusory and quite unhelpful.

Similarly, without elaborating about the basis of any claims that might be included in an amended petition, Petitioner speculated in his Motion that further investigation is likely to uncover evidence that:

> *may* support the allegations timely raised in [his] . . . Petition, or new allegations that relate back to a claim timely raised, pursuant to Fed. R. Civ. P. 15(c)(1). Additionally, this evidence *may* support new allegations or claims that do not relate back, but for which [he] is entitled to equitable tolling under *Holland v. Florida*, 560 U.S. 631, 649 (2005). Or, the evidence *may* be such that it forms the factual predicate for a new claim or claims that could not have been discovered earlier, and that therefore will be timely under 28 U.S.C. § 2244(d)(1)(D) if filed within one year of the restrictions being lifted.

Pet'r Br. 14 (emphasis added).   Without additional information, these and the other unsubstantiated assertions in Petitioner's Motion amount to unsupported conclusions based on speculation.

Petitioner's Motion includes a passing reference to certain existing claims.  In this regard, he contended that "[i]n-person interviews [of him and other potential witnesses] are necessary, at a minimum, to re-investigate [his] life history and complete an adequate mitigation investigation and to provide additional support for his claims of ineffective assistance of counsel, misconduct,

mitigation, and juror bias."[8] Petitioner, however, does not identify any of the "many . . . potential witnesses"[9] to which he alluded.  He also does not indicate what additional evidence he expects to find or why such evidence would provide additional support for the claims included in his Petition.

According to Petitioner, the "likelihood that further investigation will result in the development of evidence" that supports existing or new claims is "great."  *Id*. at 14.  He further asserts that the information known by his counsel as of September 11, 2020, and included in his Petition, "strongly suggests" that in-person interviews will "likely" result in "significant favorable mitigation evidence."  *Id.* at 13. Again, Petitioner fails to explain what information was known as of September 11, 2020, and included in his Petition; why he believes that in-person interviews will likely result in additional favorable evidence; or what evidence he expects to discover.  He also fails to explain why any amended claims necessarily depend on the type of in-person contact referenced in his Motion.  Obviously, not all investigative efforts, such as obtaining and reviewing records, or claims that are purely legal in nature would necessitate in-person contact.

If Petitioner's counsel was privy to the information referenced, at a minimum, Petitioner could have included a brief summary of the information in his Motion, as it is not incumbent on the magistrate judge or the undersigned to sift through his 170-page Petition in an effort to identify the information or related claims to which he might be referring.  Absent information regarding the anticipated amendment, and claims that Petitioner intends to include in an amended petition, the court has no way of evaluating the merits or futility of any potential amendment under Rule 15 because any such analysis is claim and fact-specific.  *See Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (equitable tolling requires consideration of "individual facts and circumstances

---

[8] Pet'r Br. 13.

[9] *Id.*

**Memorandum Opinion and Order – Page 23**

of each case."). For the same reason, the court lacks sufficient information to determine whether a delay or stay of the proceedings in this case, to allow Petitioner to conduct further investigation for the purpose of possibly discovering additional information and amending his pleadings, is warranted under *Landis* considering the purpose of the AEDPA and, as appropriate, Rule 15(a) factors.

Additionally, the optimism expressed in Petitioner's Motion regarding the likelihood of uncovering additional favorable evidence is contradicted and undermined by his acknowledgment that he has no way of knowing "what additional evidence will be gained, and how that information may be useful to [him]." Pet'r Br. 13. He contends that "because of the unexpected and exceptional circumstances of COVID-19, and the necessary restrictions imposed to fight the pandemic, *one cannot know what that evidence is, or in what category it will fall*." *Id.* at 14 (emphasis added). Despite the unknown or unknowable nature of the evidence sought that may or may not be uncovered after he filed his Petition, Petitioner, nevertheless, argues that he should be allowed "to present it to the [c]ourt as he would under normal circumstances" if it turns out that the evidence "supports a ground for habeas relief." *Id.*

Throughout his Motion, Petitioner focuses primarily on the exceptional or extraordinary circumstances created by the COVID-19 Pandemic, and he cites a number of cases for this proposition as a basis for equitable tolling. Pet'r Br. 8 & n.14. ("A number of federal courts have found COVID-19 an 'extraordinary circumstance' in the context of equitable tolling of the limitations period in § 2244(d)(1)."). Amendment under Rule 15(a), however, requires more than a simple showing of extraordinary circumstances. *Foman*, 371 U.S. at 182 (explaining that a court may consider a movant's "undue delay," "dilatory motive," and the futility of the proposed amendment in deciding whether to grant leave to amend under Rule 15(a)). Likewise, as the cases

cited by Petitioner recognize, equitable tolling requires a showing of extraordinary circumstances *and* diligence.  *See Holland*, 560 U.S. at 649 (citation omitted).  The same is true if amendment is based on Petitioner's contention that evidence may support new claims that could not have could not have been discovered earlier for purposes of § 2244(d)(1)(D).  *See* 28 U.S.C. § 2244(d)(1)(d) ("The limitation period shall run from the latest of . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.").

Petitioner used the terms diligent or diligence nine times in his Motion and supporting Brief, asserting that the COVID-19 Pandemic prevented his attorneys from "completing the diligent investigation they began before" March 13, 2020.  Pet'r Mot. 1; Pet'r Br. 1, 2, 3, 6, 13. Thus, he appears to acknowledge that a showing of diligence on his part is required. These and other similarly conclusory statements in Petitioner's Motion and Brief, however, are not supported by any factual details that would allow the undersigned to assess the appropriateness of further delaying the proceedings in this case to allow Petitioner to amend his habeas petition under Rule 15(a) after the statutory deadline. Like his Motion, Petitioner's objections emphasize the inadequacy of telephonic communications in capital cases and the general importance of in-person communications in capital habeas cases.  Neither, however, addresses the deficiency identified by the magistrate judge regarding the lack of sufficient information demonstrating Petitioner's overall exercise of reasonable diligence.

Petitioner asserted in his Motion that "[w]ithin the first month after undersigned counsel was appointed . . . on October 23, 2019, [his] counsel actively litigated issues to protect Mr. Brown's statutory rights . . . and began work on [his] case," *Id.* at 5, but he only points to the Motion for Leave to Proceed In Forma Pauperis (Doc. 10), filed November 4, 2019, and the objection to the magistrate judge's scheduling order (Doc. 14), filed November 12, 2019, that were

filed by counsel on his behalf and denied or overruled by the magistrate judge and this court. Petitioner further asserted that his "[c]ounsel met with [him] on death row and obtained his file from state habeas counsel" and "[s]oon after, counsel began reviewing the record of [his] trial, direct appeal, and state habeas proceedings," Pet'r Br. 5-6. Petitioner's Brief, however, did not indicate when his counsel first met with him in-person or whether this was the only in-person meeting with counsel or any other member of his legal team in the first half of the statutory period before the COVID-19 Pandemic lockdowns occurred in March 2020 in Texas, even though he emphasized the importance under ABA Guidelines for frequent, ongoing in-person contact at all stages of the case. Guideline 4.1 of the ABA Supplementary Guidelines that he relies upon also requires capital counsel to act with diligence in accordance with ABA Model Rules of Professional Conduct 1.3. Pet'r Br. 9-12.

In addition, Petitioner contended that "[he] has retained experts to assist in these capital habeas proceedings," and that two of these experts have "reviewed available materials related to [his] case," but they "have indicated that in order to fully inform their opinion, they will need to meet with [him] in-person." *Id.* at 12. Petitioner, therefore, argued in his Motion that his "[c]ounsel has been impeded in their efforts to conduct in-person interviews with witnesses, meet with [him] in person, obtain records and documents, and have experts evaluate [him]," and that "[t]hese limitations have prevented [his] counsel from fulfilling their professional and ethical obligations" to him. *Id.* at 8.

Petitioner's Brief, however, did not specify which documents or records that he was unable to obtain due to the COVID-19 Pandemic or why he believed they are important; nor did he set forth his efforts to obtain this information or any reasonable expectation that such information would authorize habeas relief. Moreover, according to Petitioner's Brief and evidence, his

counsel, soon after meeting with him, "began reviewing the record of [his] trial, direct appeal, and state habeas proceedings," and "provided *copious* documentation about [his] case" to two retained experts.  *Id.* at 5-6; Pet'r Mot. Ex. 3 ¶ 7 (emphasis added).  Thus, it is unclear from Petitioner's Motion and Brief how this alleged limitation realistically affected his ability to diligently pursue habeas relief.  He also did not explain how any newly discovered evidence not included in the state record could be considered in ruling on his habeas Petition in this case. *See Cullen*, 563 U.S. at 182.

Further, Petitioner does not indicate in his Motion or Brief when the two experts were retained.  According to the expert report submitted in support of Mr. Brown's Petition by Matthew Mendel, Ph.d, P.C. and dated August 21, 2020, Mr. Mendel was first contacted by Petitioner's counsel regarding this case in June 2020 (and subsequently retained), approximately only three months before the one-year statutory deadline, which undercuts Petitioner's assertion of diligence with respect to experts.  While Petitioner contends that his counsel was not appointed until October 2019, approximately one month into the statutory limitations period; the one-year limitations period runs from the latest of the events set forth in 28 U.S.C. § 2244(d), and appointment of counsel is not one of them. Petitioner also does not contend that he was somehow impeded from pursuing habeas relief in this case because of any delay in the appointment of counsel.

Finally, while a showing of diligence or lack of undue delay is not required to amend under Rule 15(c) based on a relation back theory,[10] Petitioner's Motion to possibly amend on this ground fares no better. Even assuming that any such new, independent claim would relate back to the allegations asserted within the limitations period to avoid a time bar, Petitioner's Motion provided nothing more than bare assertions based on speculation as to the evidence and claims that might

---

[10] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 552-53 (2010).

be discovered or developed by further investigation.  Absent information of any kind to assess the potential merit or futility of any such claim(s), the magistrate judge was correct in denying Petitioner's request to delay the proceedings for an indefinite period of time to allow him to amend his pleadings for this or the other reasons asserted in his Motion.   The court recognizes that the delay or stay requested by Petitioner was sought to amend at a later date—after further investigation based on evidence that might be uncovered or developed—but allowing the significant delay or stay requested based on the unsubstantiated likelihood that further investigation *might* uncover unspecified evidence that may or may not support unspecified claims would run counter to the AEDPA and Rule 15 and, thus, be improper under *Landis*. This objection is, therefore, **overruled**.

> c.   *Legal Authority to Support Requested Extension*

Petitioner contends that, contrary to the magistrate judge's order, his Motion did cite legal authority that supports the requested extension to amend his Petition:

> The Magistrate Judge also found that Petitioner failed to allege any specific facts showing that: "any existing legal authority authorizes this Court to extend the statutory deadline for the filing of Petitioner's initial petition beyond September 11, 2020." Order at 2. First, Petitioner did not ask the Court to extend the statutory deadline beyond September 11, 2020. In fact, Petitioner filed his initial Petition on that date. Second, Petitioner did cite to legal authority that would permit the Court to extend the deadline in the form of equitable tolling. *See* Mot. at 14 (citing *Holland v. Florida*, 560 U.S. 631, 649 (2005)).

> Similarly, the Order found that Petitioner did not allege any specific facts showing that: "any existing legal authority that authorizes this Court to address the merits of a claim included in an amended petition filed after September 11, 2020 that does not relate back to a claim contained in Petitioner's initial petition." Order

at 2. That finding is clearly erroneous. Petitioner did cite legal authority that would permit such review. Mot. at 14.

Pet'r Obj. 6.

Petitioner apparently misunderstands the magistrate judge's September 17, 2020 Order. The issue is not whether Petitioner cited legal authority but whether Petitioner's Motion is supported by sufficient facts.  Specifically, as Petitioner acknowledges in his Objections, the magistrate judge determined that his Motion did "**not allege any specific facts**" that would entitle him to the relief sought under any existing legal authority.  *Id.* (emphasis added) (quoting Sept. 17, 2020 Order 1-2).  For the reasons already explained in addressing Petitioner's other objections regarding alleged factual inaccuracies, the court agrees with the magistrate judge that Petitioner's Motion is devoid of facts and information required to support the relief sought. Accordingly, this objection is without merit and **overruled**.

Moreover, the handful of unpublished district court cases relied on by Petitioner are distinguishable, not binding on this court, and do not support Petitioner's requested extension or stay for a number of reasons.  Petitioner first cited to a memorandum and opinion order entered in *United States v. Crusius* on July 28, 2020, to support his assertion that "necessary measures taken to slow the pandemic have effectively curtailed counsel's investigation."  Pet'r Br. 8.  The court was initially unable to locate this case on Westlaw or the federal court electronic case filing system using the case number provided by Petitioner (EP-20-CR-0039-DCG) until it realized the number for this case is actually EP-20-CR-00389-DCG. The court's opinion in this case, which is pending in the Western District of Texas, addressed the issue of whether, at the defendant's request, the court had the power to enter pretrial management orders in a criminal capital case that would dictate the timing on any Government mitigation presentation with defense counsel and a deadline for the Government to decide whether it would seek the death penalty.  The court noted the

exceptionally voluminous and complex nature of the capital case, the importance of a meaningful mitigation investigation, and the effect that the COVID-19 Pandemic and shutdowns had on defense counsel's mitigation investigation. Notwithstanding the extraordinary circumstances presented by the Pandemic, the court, for jurisdictional reasons, denied the defendant's request for additional time to prepare a meaningful mitigation presentation and order that would dictate how the Government should manage the Death Penalty Protocol procedures, including the procedures for the preauthorization mitigation presentation.  Even assuming that this case lends support to Petitioner's assertion that the Pandemic similarly curtailed his mitigation investigation efforts, it does not support the relief sought by him, which is entirely different from the relief sought in *Crusius*. It is also distinguishable because it is a *criminal* capital case, not a civil habeas capital case under section 2254 in which the state court record has already been developed and review is limited to the record before the state court to the extent that a claim or claims were previously adjudicated on the merits. *Cullen*, 563 U.S. at 181-82.

Petitioner also cited several cases, contending that "[a] number of federal courts have found COVID-19 an 'extraordinary circumstance' in the context of equitable tolling of the limitations period in § 2244(d)(1).").  Pet'r Br. 8 & n.14.  As already explained, extraordinary circumstances alone are not enough to support equitable tolling under *Holland*.  Reasonable diligence by the petitioner in pursuing relief is also required, and all of the cases cited by Petitioner recognize this. As discussed below, the court in one of the cases cited by Petitioner determined that the petitioner had not established *Holland*'s reasonable diligence requirement.  Other courts determined, without

elaborating, that the petitioners had established reasonable diligence.  In some instances, it was noted that the respondent did not dispute that the petitioner had exercised reasonable diligence.

Based on the reasoning in *Pickens v. Shoop*, No. 19-cv-558, 2020 WL 3128536, *3 (S.D. Ohio, June 12, 2020), also cited in Petitioner's Brief, the court in *Fitzgerald v. Shinn*, No. CV-19-5219, 2020 WL 3414700 (D. Ariz. Jun. 22, 2020), denied as premature the petitioner's motion for prospective equitable tolling that was filed before expiration of the AEDPA limitations period, because it did not have sufficient information to determine whether the petitioner had exercised diligence "before, during and after the existence of the COVID-19 pandemic." *Id.* at *5.  The court in *Fitzgerald* explained that "[e]quitable tolling is generally applied retroactively, though the Supreme Court has not passed on whether equitable tolling may be granted [prospectively] prior to the filing of a petition," and noted that case law regarding prospective equitable tolling varies by jurisdiction. *Id.* at *3. The court further noted that, while prospective equitable tolling has been common in the Ninth Circuit and California courts in the past, other federal circuits and district courts, including the Fifth Circuit and Northern District of Texas, have "explicitly held that federal courts lack jurisdiction to consider the timeliness of a habeas petition until it is actually filed." *Id.* at *3 (quoting *United States v. McFarland*, 125 F. App'x 573, *1 (5th Cir. Apr. 6, 2005) ("Before the [§ 2255] petition itself is actually filed, 'there is no case or controversy to be heard, and any opinion we were to render on the timeliness would be merely advisory.'"); and *Gray v. Quarterman*, No. 3:08-CV-2068-D, 2008 WL 5385010 (N.D. Tex. Dec. 23, 2008) (federal courts do not "sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]")).

The court in *Pickens* similarly denied as premature a petitioner's motion for a prospective ruling that claims included in a future amended petition would be timely under an equitable tolling

theory because of the Pandemic.  It, nevertheless, determined that there was good cause to grant the petitioner's requested extension to file an amended petition 94 days after the state of emergency was lifted in Ohio and modify the deadlines in the scheduling order for the filing of the respondent's answer because the respondent did not object.  *Pickens*, 2020 WL 3128536 at *2. It did after determining, without elaborating, that it "seemed obvious" that the petitioner would be able to satisfy *Holland*'s diligence requirement for equitable tolling with respect to any amended claim, and that it was "inclined to find equitable tolling [at a later time] as to any amended claim whose factual predicate even facially appears to have required the type of in-person contact, or any other activities such as travel" that was impeded by the Pandemic and state of emergency.  *Id.* at *3.

　　　In addition, Petitioner cited *Cowan v. Davis*, 1:19-CV-00745-DAD, 2020 WL 1503423, at *2 (E.D. Cal. Mar. 30, 2020), and *Cowan v. Davis*, 1:19-CV-00745-DAD, 2020 WL 4698968, at *3 (E.D. Cal. Aug. 13, 2020), as examples of cases in which courts have found "extraordinary circumstances" required for equitable tolling because of the COVID-19 Pandemic.  These cases both involved requests by the habeas petitioner to prospectively toll the AEDPA statute of limitations deadline before its expiration to give the petitioner additional time to file his initial petition.  The first motion was unopposed, whereas the second was opposed on the ground that any "anticipatory equitable tolling" determination was premature before the petitioner filed his initial petition.  *Cowan*, 2020 WL 4698968, at *2.  After addressing whether prospective equitable tolling was still recognized in the Ninth Circuit, the court, without elaborating, granted the motions based on its determination that the petitioner's investigation and the preparation of his petition had

been impeded by the Pandemic despite his exercise of diligence before and during the COVID-19 Pandemic.  *Id.* at *2; *Cowan*, 2020 WL 1503423, at * 2.

Finally, Petitioner cited *Hutto v. Cain*, No. 3:20-CV-98-DPJ, slip op. (S.D. Miss. Jun. 6, 2020).  The court was unable to locate any June 6, 2020 order for this case on Westlaw or the federal electronic case filing system.  It did, however, locate a June 26, 2020 order (Doc. 42) in which the *Hutto* court granted the petitioner's motion for equitable tolling or modification of the scheduling order one month before expiration of the AEDPA limitations period and provided the petitioner three additional months to file his initial habeas petition after the limitations period.  In granting the motion, the court noted that it was unopposed and, without elaborating, it also determined that "counsel for Hutto have been diligent in this matter, as may be seen by the communications between them and the [c]ourt regarding the budget for this case."  *Id.* at 2.

Unlike *Cowan*, *Pickens*, and *Hutto*, the court does not have sufficient information at this time to determine whether Mr. Brown exercised reasonable diligence before and during the Pandemic.  Mr. Brown's Motion in this case was also opposed by the State.  Thus, even if the court assumes that the Pandemic qualifies as the type of extraordinary circumstance that satisfies this requirement for equitable tolling in *Holland*, this fact alone is insufficient for purposes of

determining whether a continuance of the scheduling order deadlines to allow Petitioner to amend his petition or, alternatively, stay the case on this ground is appropriate.

<em>d.        Similar Ruling in Another Habeas Case</em>

Regarding his contention that an order similar to the magistrate judge September 17, 2020 order was entered in another habeas case, Petitioner argues:

> These clearly erroneous findings—repeated verbatim from an order in a different case—made without the benefit of a response from the State (a process identical to the other case), make this an appropriate case for reconsideration.

Pet'r Obj. 6.  The case Petitioner refers to is *Matthew Johnson v. Bobby Lumpkin*, Civil Action No. 3:19-CV-310-E, which is pending before United States District Judge Ada Brown. Regarding the order entered in *Johnson*, Petitioner asserts:

> It is important to note that the O[r]der in this case is nearly identical to the order entered by a different judge, in a different capital habeas proceeding in this same Division, three days prior to the Order in Petitioner's case. *See Johnson v. Lumpkin*, No. 3:19-cv-2310-E, ECF No. 23 (N.D. Tex. Sept. 14, 2020). Mr. Johnson's case is in a similar procedural posture as Petitioner's, and Mr. Johnson filed a motion seeking relief from the court due to the extraordinary circumstances of COVID-19. *Id.* at ECF No. 22. Mr. Johnson's motion contains factual allegations, assertions and desired relief different than those in Petitioner's Motion. Notwithstanding the factual differences in the two cases and the respective motions, two different judges, in two different cases entered virtually identical orders denying relief. In neither case was the State given time to respond.

Pet'r Obj. 2.

Mr. Johnson's habeas case and motion are not before this court.  Petitioner is correct that the procedural posture in both cases was similar when the initial habeas petitions and motions for extension of time in both cases were filed in September 2020; however, for efficiency purposes, it is not uncommon for magistrate judges and district judges to use form orders when appropriate.

This alone is not a valid basis for objection, especially when, as here, the motions in the two cases are deficient for many of the same reasons.

Both are lacking in detail regarding the exercise of reasonable diligence. Like Mr. Brown's Motion, Mr. Johnson's motion also contains conclusory and vague assertions regarding the possibility that further investigation *might* uncover evidence of an unspecified nature that may or may not relate back to a timely raised claim or support a yet-to-be raised claim for which equitable tolling might be appropriate. In addition, Mr. Johnson relies on declarations by Ms. Vartkessian and Ms. Olson-Gault that are identical to those submitted in Mr. Brown's case. These declarations address the effects of COVID-19 Pandemic *generally* on mitigation investigations in capital cases and the professional standards for counsel in death penalty cases. Nothing in these formulaic declarations is specifically tailored to Mr. Johnson's or Mr. Brown's cases as far as the claims or evidence they were unable to obtain despite the exercise of reasonable diligence *throughout the statutory period*; rather, the motions in both cases focus solely on the inability to conduct in-person interviews during the second half of the statutory period between March 13, 2020, and September 11, 2020, as a result of the COVID-19 Pandemic. Accordingly, the court **overrules** this objection.

### e.    *Ruling on Motion Before Response or Reply Filed*

Petitioner contends that, had the magistrate judge allowed Respondent to respond to his Motion before ruling, he could have addressed any concerns raised in the response by filing a clarifying reply in support of his Motion. Pet'r Obj. 5 & n.2.

There is no due process right to file a reply in support of a motion when the motion is denied before a response is filed, and courts are not required to consider new arguments raised for the first time in a reply brief that could have been reasonably anticipated and raised in the movant's

motion.  *Perez v. Bruister*, 823 F.3d 250, 273 n.31 (5th Cir. 2016) (citation omitted).  This objection is, therefore, without merit and **overruled**.

### 2.       Alleged Legal Errors

#### a.       Consideration of Landis Factors

Petitioner argues that the magistrate judge erred in denying his alternative request to stay the proceedings in this case without addressing his argument, based on the Supreme Court's opinion in *Landis v. North American Company*,[11] that district courts have inherent authority to control their dockets and stay proceedings.  In this regard, he again contends that the magistrate judge quickly denied his Motion without a response from the State, failed to "weigh competing interests" as required by *Landis*, and did not articulate any legal standard or authority for the decision to deny his Motion.  Petitioner argues that, had the magistrate judge's order considered and weighed the competing interests at issue, it would have recognized that the effects of the COVID-19 Pandemic are the type of "extraordinary public moment" identified in *Landis* that warrant the issuance of a stay that will  benefit him and promote public safety. Pet'r Obj. 7. Petitioner asserts that the magistrate judge's suggestion that he "must conduct his investigation in a certain manner . . . to obtain the relief he seeks regardless of its effects on the public welfare . . . is simply arbitrary" and not supported by any legal basis.  *Id.*

Petitioner, though, never mentioned *Landis* in his Motion or Brief and only made a passing reference to his alternative request to stay the proceedings three times without any supporting legal analysis.[12]  "[L]egal arguments not made in the first instance before the magistrate judge" are

---

[11] Under *Landis*, courts "must weigh competing interests and maintain an even balance" when considering whether to grant a stay. *Landis*, 299 U.S. at 254-55. Courts consider the following factors in applying *Landis*: "(1) any hardship imposed on the moving party by proceeding with the action, (2) any prejudice to the non-moving party if the stay is granted, and (3) the interests of judicial economy."

[12] Pet'r Mot. 1 ("*Alternatively, Petitioner seeks to have these federal proceedings stayed* after the filing of his Petition

**Memorandum Opinion and Order – Page 36**

waived and not properly before the district court when raised for the first time in an objection. *See Benamou v. Wells Fargo Bank Nat'l Assoc. for Carrington Mort'g Loan Trust*, 711 F. App'x 241, 242 (5th Cir. 2018) (quoting *Freeman v. City of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) ("[A] party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge.")).

Even if not waived, any analysis of Petitioner's request to stay the proceedings in this case would not be limited to consideration of the matters emphasized in his Motion and Brief, which focused almost exclusively on what he referred to as the extraordinary circumstances created by the COVID-19 Pandemic during the six months between March 13, 2020, and September 11, 2020. Petitioner fails to recognize that any such analysis would also have to consider the AEDPA's "twin purposes" of "reduc[ing] delays in the execution of state and federal sentences, particularly in capital cases[,]" and encouraging petitioners to seek relief from state courts first.[13] *Rhines*, 544 U.S. at 275-77 (quoting *Woodford*, 538 U.S. at 206). Additionally, factors regarding amendment of pleadings under Rule 15 must be taken into account because Petitioner's stated purpose for seeking to modify unexpired filing deadlines or to stay this case is to amend his petition at some point in the future either under Rule 15(c), Rule 15(a), or both. *See Saenz*, 282 F. 3d at 356 (applying Rule 15(a) to a habeas proceeding and remanding to the district court for consideration

---

for Writ of Habeas Corpus, to account for the ongoing impact of COVID-19.") (emphasis added); Pet'r Br. 2 ("*Alternatively, Mr. Brown seeks a stay of these proceedings* to account for the ongoing effects of COVID-19.") (emphasis added). *Id.* at 15 ("Unintended, unanticipated, and inefficient results can be avoided by modifying or suspending the current schedule in recognition of the extraordinary circumstances and their current and future effects on these proceedings, *or by staying these proceedings* upon the filing of Mr. Brown's initial habeas petition.") (emphasis added).

[13] The court realizes that Petitioner's Motion to modify the scheduling order or stay the case is not specifically based the need to return to state court for exhaustion purposes. The court mentions this only because it is readily apparent from the Petition and the parties' briefing regarding the claims asserted in the Petition that exhaustion is an issue. More recently, Petitioner also filed a *Rhines* motion seeking a stay and abeyance of the proceedings in this case for exhaustion purposes. Further, Petitioner relies on *Rhines*, an exhaustion case, contending that open-ended stays are frequently granted. *See* Pet'r Obj. 5.

**Memorandum Opinion and Order – Page 37**

of whether an amendment related back to the original pleading and other Rule 15 factors in determining whether the amendment should be allowed).

The court also notes that Petitioner could have amended his initial petition that was filed on September 11, 2020, as a matter of course under Rule 15(a)(1) without court approval, if he had done so by May 28, 2021, within 21 days after the state filed its response on May 7, 2021. He, instead, elected to file on May 14, 2021, his Amended Objection to the magistrate judge's order that denied his Motion to modify the unexpired filing deadlines or stay the proceedings in this case. This objection is, accordingly, **overruled**.

*b.      Equitable Tolling and Related Considerations*

Petitioner next takes issue with the magistrate judge's finding that his Motion was devoid of any factual allegations that would warrant equitable tolling. Pet'r Br. 8. Petitioner contends that, for a number of reasons, this determination is arbitrary and capricious and based on clearly erroneous findings and assumptions. As a preliminary matter, Petitioner asserts that the magistrate judge determined, without any reference to legal authority, that he was not entitled to equitable tolling, even though he did not request an equitable tolling finding in his Motion.

Petitioner further asserts that this determination and the magistrate judge's finding that he "had between September 2019 and March 2020 to fully investigate the facts surrounding his federal habeas case through in-person interviews"[14] fail to consider that his federal habeas counsel was not appointed until October 23, 2019. Pet'r Obj. 8 (citing 28 U.S.C. § 2244(d)). Petitioner contends that this determination is also inconsistent with congressional intent that he "should have one year in which to investigate and present his claims" because it incorrectly assumes, without considering the actual circumstances of this case, that his counsel "could have gathered and read

---

[14] Obj. 8 (quoting September 17, 2020 Order).

**Memorandum Opinion and Order – Page 38**

the record and all extra-record evidence from the files of prior counsel, analyzed it for potential

issues, identified witnesses, located them, and conducted *and completed* in-person interviews

within the five months following appointment." Pet'r Obj. 9.  In particular, Petitioner argues that,

in ruling on his Motion, the magistrate judge failed to consider the following factors that federal

habeas courts routinely examine for budgeting purposes:

> (1) the length of the trial record; (2) the length and content of the direct appeal briefs
> and opinion; (3) whether the state court found error or failures to preserve error in
> the record; (4) the number of issues raised in the state habeas petition, their
> complexity, or the extent of their reliance on extra-record evidence; (5) the length
> of the habeas courts findings and conclusions; (6) the state court's ruling on the
> state habeas petition, its length and complexity, and whether it found any claims
> defaulted; (7) whether there was evidentiary hearing in state habeas court, and if
> so, the size of the record it produced; (8) how much time it took federal habeas
> counsel to assemble the record, and the extra-record evidence the Supreme Court
> has found necessary to identify habeas issues like ineffective assistance of counsel.

Pet'r Obj. 8.

From the foregoing objection, it appears that Petitioner contends that the magistrate judge

should not have considered whether an extension based on equitable tolling was appropriate

because he did not request an equitable tolling finding in his Motion.  As noted earlier, however,

Petitioner specifically argues in support of his objections regarding alleged factual errors that he

"cite[d] to legal authority [in his Motion] that would permit the Court to extend the deadline in the

form of equitable tolling. *See* Mot. at 14 (citing *Holland v. Florida*, 560 U.S. 631, 649 (2005))."

Pet'r Obj. 6.  Likewise, as discussed, Petitioner also cited several other cases in his Motion for the

proposition that "[a] number of federal courts have found COVID-19 an 'extraordinary

circumstance' in the context of equitable tolling of the limitations period in § 2244(d)(1)."  Pet'r

Br. 8 & n.14.  Most of the cases cited in Petitioner's Motion are equitable tolling cases.  Thus, it

is not surprising that the magistrate judge was under the impression that Petitioner was seeking an

extension based on equitable tolling.  This contention by Petitioner is, therefore, without merit, as

he is obviously attempting to ride two horses in different directions without falling off, which he cannot do.

Petitioner's other arguments are similarly without merit.  The one-year statute of limitations does not run from the time that Petitioner is appointed counsel, and, the court agrees, for the reasons already discussed at length, that Petitioner has not demonstrated that he exercised reasonable diligence as required for an extension under Rule 15, whether based on equitable tolling or another ground.  He, instead, focuses solely on the COVID-19 obstacles to his investigation that began on March 13, 2020, halfway through the limitations period.

Additionally, Petitioner cites no legal authority for his argument that the magistrate judge erred in not considering factors, in ruling on his request to modify the scheduling order or stay the case, that, according to him, are routinely considered by federal habeas courts for budgeting purposes.  Even if relevant to Petitioner's requested continuance or stay, it is unclear how the magistrate judge could have considered factors or matters that were not addressed or included in his Motion.  Accordingly, Petitioner waived this legal argument by failing to present it to the magistrate judge in the first instance. *See Benamou*, 711 F. App'x at 242 (quoting *Freeman*, 142 F.3d at 851.  Accordingly, these objections by Petitioner are **overruled**.

### c.      *Opportunity to File a Reply*

Petitioner reiterates that, "[i]f the State had been permitted to file a response, and made an issue of the period between September 2019 and March 2020, [he] would have had notice and an opportunity to respond by way of reply," and that the magistrate judge's "decision denied [him] such notice" and opportunity to reply.  Pet'r Obj. 9.  This objection is without merit and **overruled** for the reasons already stated, as there is no due process right to file a reply in support of a motion when the motion is denied before a response is filed, and courts are not required to consider new

arguments raised for the first time in a reply brief that could have been reasonably anticipated and raised in the movant's motion. *Perez*, 823 F.3d at 273 n.31. Additionally, no legal authority is cited by Petitioner that establishes otherwise. The court, therefore, finds no legal error.

> ### d.   Adherence to High Professional Standards

Petitioner contends that the magistrate judge's finding that his "legal and investigative staff have not been prevented since March 2020 from investigating his claims via the telephone or other means of communication . . . , including first class [mail]" disregards the explanation in his Motion for why investigation by mail in capital cases is not appropriate or feasible. Petitioner argues that this finding is: (1) inconsistent with Congress' intent to guarantee capital habeas petitioners the right to counsel, and expert and investigative services; and (2) contrary to law because it is inconsistent with and would require counsel to ignore the requirement in capital cases that appointed attorneys adhere to the highest professional standards in accordance with the ABA Guidelines, this district's Local Civil Rules and Criminal Justice Act Plan, and the Texas Disciplinary Rules of Professional Conduct. Petitioner relies on cases from other circuits for the proposition that mitigation investigative efforts in capital cases that are limited to telephonic interviews of witnesses, family members, and friends do not comport with this standard and can result in an ineffective assistance of counsel finding.[15]

This objection by Petitioner asks the court to read the above-quoted language from the magistrate judge's order in isolation. This, however, would result in a meaning that is clearly not intended by the magistrate judge's order. When read in the context of the order as a whole, the point made by the magistrate judge is not, as Petitioner contends, that telephonic interviews are a

---

[15] Pet'r Obj. 10 & n.4 (citing *Ferrell v. Hall*, 640 F.3d 1199, 1219 n.14 & 1229 (11th Cir. 2011); *Doe v. Ayers*, 782 F.3d 425, 438-39 (9th Cir. 2015); *Correll v. Ryan*, 539 F.3d 938, 945 (9th Cir. 2008); *Harries v. Bell*, 417 F.3d 631, 638 (6th Cir. 2005); and *Eaton v. Wilson*, No. 09-cv-261, 2014 WL 6622512, at *83 (D. Wyo. Nov. 20, 2014)).

substitute for in-person interviews or that counsel should not adhere to appropriate professional standards of representation.  Instead, the focus of the order is to explain the different ways Petitioner could have, but failed to demonstrate how he exercised diligence *throughout the statutory period* in investigating claims and supporting evidence.  Rather than providing facts regarding his counsel's efforts in representing him in this case and explaining what he had accomplished during the statutory period before filing his Petition, his Motion and the declaration of his attorney are full of conclusory statements that are lacking in detail, and focus primarily on what his counsel was unable to accomplish.  Petitioner obviously recognized that he was required to show that he had exercised reasonable diligence in pursuing relief because, as noted, he used the terms diligent and diligence nine times in his Motion and Brief.  In his Objections, he also contends that the magistrate judge should have conducted a more thorough analysis and weighed or considered various matters, but it is not possible to do so in a vacuum based only on Petitioner's conclusory assertions that unspecified avenues of potential relief or evidence is inaccessible despite "the exercise of due diligence," and the Pandemic "prevented his counsel from completing the diligent investigation they began before" March 2020.  Pet'r Mot. 1; Pet'r Br. 1, 2, 3, 6, 13. This objection is, therefore, **overruled**.

### e.    *Relevance of Prior Continuances*

Finally, Petitioner contends that the denial of his Motion is contrary to the magistrate judge's prior orders that granted his request to extend the time for filing his habeas petition to the congressionally mandated one-year limitations date of September 11, 2020.

The court **overrules** this objection.  The considerations for granting Petitioner's requests for brief, finite extensions of time to file his Petition by the statutory deadline are quite different than the considerations that the court must take into account in determining whether a significant

continuance or stay of an indefinite nature is appropriate *after* expiration of the AEDPA's one-year limitations period. Thus, the magistrate judge's prior rulings have little or no bearing on the correctness of the decision to deny Petitioner's current Motion. The magistrate judge's prior orders also put Petitioner on notice that he would be required to provide a detailed description, for any request to extend a deadline set by the magistrate judge, that included the reasons why he was unable to comply with the deadline despite the exercise of diligence.

## V.      Motion for Leave to File and Brief of Amicus Curiae (Doc. 33)

Like Petitioner's Motion and original Objections, the amicus curiae brief that the National Association of Criminal Defense Lawyers seeks leave to file in support of Petitioner's Objections to the magistrate judge's order focuses on the import in capital cases of conducting mitigation investigations in-person rather than telephonically or by video conference; counsel's duty to conduct a thorough and independent investigation regardless of the Pandemic; and the effect of the Pandemic on such efforts. The court has determined for the reasons already explained, however, that the magistrate judge's denial of Petitioner's Motion should be affirmed notwithstanding substantially similar arguments by Petitioner because of the lack of specificity regarding: (1) the claims he was prohibited from investigating and intends to include in an amended petition; and/or (2) facts regarding his efforts to diligently pursue such claims *during the limitations period before and after* the start of the COVID-19 Pandemic. Accordingly, consideration of the matters in the proposed amicus curiae brief by the National Association of Criminal Defense Lawyers adds nothing new and does not change the court's analysis or decision. For this reason, the court **denies as moot** the Motion for Leave to File and Brief of Amicus Curiae,

Case 3:19-cv-02301-L-BN   Document 64   Filed 08/27/21   Page 44 of 44   PageID 23712

National Association of Criminal Defense Lawyers, In Support of Petitioner's Objections to Magistrate Judge's Order (Doc. 33).

## VI.    Conclusion

For the reasons explained, the court **affirms, as supplemented by this opinion,** the magistrate judge's September 17, 2020 order (Doc. 31) and ruling denying Petitioner's Motion to Modify or Suspend Scheduling Order Due to Extraordinary Circumstances (Doc. 30); **overrules** Petitioner's Objections (Doc. 32) to that order; **strikes** Petitioner's Amended Objections (Doc. 42); and **denies as moot** the Motion for Leave to File and Brief of Amicus Curiae, National Association of Criminal Defense Lawyers, In Support of Petitioner's Objections to Magistrate Judge's Order (Doc. 33)

**It is so ordered** this 27th day of August, 2021.

Sam A. Lindsay
United States District Judge