UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICAH CROFFORD BROWN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:19-cv-2301-L-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION
<u>REGARDING MOTION FOR STAY AND ABEYANCE</u>**

Petitioner Micah Brown has filed a motion for stay and abeyance, *see* ECF no. 63, to which the Respondent has filed a response in opposition, *see* ECF no. 67, and Brown has filed a reply in support, *see* ECF no. 68. For the reasons explained below, the Court should deny Brown's motion for stay.

## Background

The lengthy factual scenario leading up to Brown's capital offense is set forth in detail in the Texas Court of Criminal Appeals ("TCCA") opinion affirming Brown's conviction and sentence on direct appeal. *See Brown v. State*, AP-77,019, 2015 WL 5453765, *1-*6 (Tex. Crim. App. Sept. 16, 2015). The relevant facts summarized by the TCCA will be repeated here only to the extent necessary to furnish a proper context for disposition of Brown's motion for stay.

Multiple witnesses testified regarding a number of instances of violence involving Brown, his ex-wife Stella Ray ("Ray"), and another of Ray's ex-husbands

(Tracy Williams) in the days preceding Ray's murder. Those include instances in which Brown allegedly gave Ray and one of their young children each a black eye and another in which Williams allegedly choked Brown in front of Brown's and Ray's children.

It is undisputed that Brown intentionally murdered his ex-wife Stella Ray (henceforth "Ray") in July 2011 by fatally shooting her with a sawed-off shotgun as she sat in her vehicle talking to a 911 dispatcher on her telephone. Ray reported to the dispatcher that Brown was pursuing her, that she had previously filed a complaint against Brown, that she feared he might ram his vehicle into hers, and that she had informed Brown that she was then speaking with the police. A recording of the 911 call was played for the jury at trial.

A police officer responded to Ray's call. As he approached Ray's and Brown's vehicles from behind with his lights flashing (the two vehicles were stopped side by side), his dash camera recorded the fatal shooting. Immediately after firing the fatal shot, Brown drove away from the scene while law enforcement officers attempted to render assistance to the unresponsive Ray.

Ray's fatal shooting took place after Ray brought her vehicle to a stop and with the couple's two small children in the backseat of Ray's vehicle. Brown testified that he deliberately aimed his shotgun at Ray's head and pulled the trigger. Immediately before the fatal shooting, Brown pursued Ray's vehicle in his own vehicle for some distance, flashed his lights, drove next to her, and yelled at her. Brown admitted these facts during his testimony at the guilt-innocence phase of his trial.

The jury also saw a televised interview that Brown gave to a reporter following his arrest in which Brown admitted that he murdered Ray because he wanted her dead. During the interview, Brown also admitted that he believed Ray was talking to the police on her phone as Brown pursued her.

At the punishment phase of trial, the jury heard testimony establishing that, following the fatal shooting, Brown left voice mail messages for Tracy Williams in which Brown threatened to kill Williams.  The jury also read a post-arrest letter that Brown wrote to another jail inmate named "Casper" in which Brown recounted that he chased Ray down and made her pull over, that he saw her talking on the phone and knew she was speaking with police, and that. when he saw the red and blue lights behind him, he pulled out his shotgun and "blew her head off." Near the conclusion of his letter, Brown confessed that he felt no remorse for killing Ray and that he would also kill Ray's other ex-husband (Tracy Williams) if he had the chance. Brown's letter instructed Casper to dispose of the letter after reading it.

A Hunt County grand jury indicted Brown on a charge of capital murder – specifically, intentionally and fatally shooting Ray while in the course of committing and attempting to commit the offenses of obstruction, retaliation, and terroristic threat.

In May 2013, a Hunt County jury convicted Brown of capital murder and returned its answers to the Texas capital sentencing special issues, which required the state trial court to impose a sentence of death. The Texas Court of Criminal

Appeals affirmed Brown's conviction and sentence. *See Brown v. State*, AP-77,019, 2015 WL 5453765 (Tex. Crim. App. Sept. 16, 2015).

In its opinion on direct appeal affirming Brown's conviction, the TCCA expressly rejected Brown's argument that there was insufficient evidence to show that he murdered Ray in the course of committing or attempting to commit the offense of retaliation or obstruction:

> The charge authorized the jury to convict appellant of capital murder if it found that he intentionally murdered Ray in the course of committing or attempting to commit obstruction or retaliation, or terroristic threat. See TEX. PENAL CODE § 19.03(a)(2). With regard to the offense of obstruction or retaliation, Section 36.06 of the Texas Penal Code provides:
>
> > (a) A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:
> > (1) In retaliation for or on account of the service or status of another as a
> > > (A) public servant, witness, prospective witness, or informant; or
> > > (B) person who has reported or who the actor knows intends to report the occurrence of a crime; or
> > (2) to prevent or delay the service of another as a:
> > > (A) public servant, witness, prospective witness, or informant; or
> > > (B) person who had reported or who the actor knows intends to report the occurrence of a crime.
>
> TEX PENAL CODE § 36.06(a).
>
> Appellant claims that the evidence was insufficient to prove the underlying offense of obstruction or retaliation. Appellant admits that he intentionally shot and killed Ray, but he disputes the reason why he did it. He contends that "there are other possible and more probable reasons why [he] killed his ex-wife." For example, he was upset and angry that she was moving away with his children; let Williams move in with her; did not intervene when Williams "choke[d] him out in front of his kids"; "recently refused to let him see his kids"; and refused to let him know where his children were on the day that he shot her. He contends that due to a "combination of these factors," he "just lost it" and made a "spur of the moment" decision to shoot Ray.

Appellant was aware that Ray called the police on July 16 when he threatened to commit suicide, which led to is arrest for possession of a prohibited weapon. He told Homestead that Ray had him arrested because she thought he was suicidal. Appellant contends that "the evidence demonstrated that he harbored no animus against [Ray] for her role in his arrest for possession of a prohibited weapon." However, he complained to the reporter in the televised news interview that he "wasn't able to go hunting anymore" because the police came to his house in response to Ray's call and "found a sawed off shotgun."

Appellant claims that he did not know Ray called the police to report the family violence incident that occurred on July 19. However, he acknowledged that he took her camera, which contained photographs of her face following that incident. And appellant admittedly knew that Ray was calling the police when he was chasing her in his car on July 20. Ray reported to the dispatcher that appellant was following and harassing her, that she was afraid he was going to rum into her car, and that at one point he "cornered [her] in." Ray also informed the dispatcher that appellant knew she was calling the police. In his phone conversation with Crofford, his interview with White and Fuller, his interview with a television news reporter, and his letter to "Casper," appellant confirmed that he knew Ray called the police. He also admitted that he saw a police officer pulling up behind him before he shot Ray. The jury could have rationally concluded based on this evidence that appellant murdered Ray in retaliation for calling the police on July 20, or to prevent her from saying anything further to police about the events that transpired on or before July 20.

Although there may have been several reasons why appellant wanted to kill Ray, the evidence viewed in the light most favorable to the verdict was sufficient for the jury to rationally conclude that appellant intentionally murdered Ray in the course of committing or attempting to commit obstruction or retaliation.

*Brown v. State*, 2015 WL 5453765, *7-*8.

Brown filed a state habeas corpus application in which he asserted a range of ineffective assistance claims, including arguments that his trial counsel failed to (1) adequately investigate his background and mental health and present available mitigating evidence, including evidence of autism; (2) negate the underlying elements of capital murder at trial and on appeal; (3) object at trial and complain on appeal to

portions of the prosecution's closing jury argument at the punishment phase of trial; (4) seek a change of venue; and (5) seek to suppress Brown's confession. Additionally, Brown's state habeas counsel argued that (1) the Texas capital sentencing special issues were unconstitutional for a variety of reasons, including a lack of definitions of key terms in the future dangerousness special issue as well as a narrow statutory definition of mitigating circumstances as employed in the mitigation special issue; (2) a juror engaged in jury misconduct; and (3) geographic and racial disparities across the State of Texas result in an arbitrary system of administering the death penalty across the State. *See Ex parte Brown*, WR-85,341-01, 2019 WL 4317041, *1 (Tex. Crim. Ap. Sept. 11, 2019).

After the state district court held an evidentiary hearing and issued findings of fact and conclusions of law, the TCCA denied Brown's application for state habeas corpus relief, rejecting all claims on the merits and concluding Brown's ineffective assistance claims all failed to satisfy either prong of *Strickland*. *Ex parte Micah Crofford Brown*, WR-85,341-01, 2019 WL 4317041 (Tex. Crim. App. Sept. 11, 2019).

## Proceedings In This Court

On September 11, 2020, Brown filed his federal habeas corpus petition in this court, *see* ECF no. 29, in which he asserted eleven claims for relief, most of which are variations on claims that he raised either on direct appeal or in his state habeas corpus application. More specifically, Brown argues in his federal habeas corpus petition that (1) his trial counsel rendered ineffective assistance by failing to adequately investigate Brown's background and mental health and present expert

-6-

testimony showing that Brown suffers from neurodevelopmental disorders (specifically Autism Spectrum Disorder ("ASD") and Attention Deficit Hyperactivity Disorder ("ADHD")) which negatively impact his ability to communicate verbally, as well as a history of childhood sexual abuse, a family history of neglect, rampant substance and sexual abuse, his own history of long term substance abuse beginning at an early age, resulting depression and feelings of emasculation and inadequacy, all of which he argues could have shown that Brown lacked the required mental state to commit capital murder; (2) his trial counsel rendered ineffective assistance at the punishment phase of his trial by failing to adequately investigate Brown's background and present additional mitigating evidence in the form of expert testimony showing Brown suffers from ASD and ADHD, as well as the deleterious family and personal history discussed in connection with his first claim for relief (i.e., evidence Brown grew up in a dysfunctional family bereft of adult role models, Brown was sexually molested as a child, Brown was subjected to verbal and emotional abuse and well as exposed to rampant substance abuse and sexual abuse, infidelity, and developmental hurdles); (3) a conflict of interest existed between Brown's lead trial counsel and the defense team's fact investigator because the investigator's wife was potentially a witness to alleged drug abuse by Ray and Brown's trial team chose not to call this witness to testify at trial out of fear of losing their investigator; (4) his trial counsel rendered ineffective assistance by failing to move for a change of venue and the state trial court erred in failing to sua sponte grant a change of venue; (5) the prosecution engaged in a variety of improper comments during closing jury argument

at the punishment phase of trial; (6) his constitutional rights were violated by the admission of uncounseled statements Brown made following his arrest and his trial counsel rendered ineffective assistance by failing to move to exclude Brown's statements to a news reporter and a televised interview Brown gave after his arrest; (7) an unnamed juror engaged in unspecified misconduct; (8) the Texas capital sentencing statute violates various constitutional provisions because (a) the future dangerousness special lacks definitions for a variety of key terms contained therein, (b) the term mitigating evidence or mitigating circumstance as defined by Texas statute if unconstitutionally narrow, and (c) the Texas capital sentencing scheme is unconstitutional because it fails to advise the jury of the effect of a single holdout juror at the punishment phase of trial; (9) Brown's sentence is unconstitutional because it was not subjected to proportionality review on appeal; (10) Brown was deprived of due process and effective assistance of counsel during his state habeas corpus proceeding when the state habeas trial court excluded certain evidence Brown proffered during his state habeas evidentiary hearing and his state habeas counsel rendered ineffective assistance during Brown's state habeas corpus proceeding; and (11) Brown's constitutional rights were violated by virtue of the cumulative impact of the foregoing errors.

Brown has also asserted a few unexhausted claims, such as his unexhausted initial claim in which he argues that his trial counsel rendered ineffective assistance at the guilt-innocence phase of trial by failing to adequately investigate Brown's background and present expert testimony showing that Brown suffers from Autism

Spectrum Disorder ("ASD"), Attention Deficit Hyperactivity Disorder ("ADHD"), as well as a history of childhood emotional, verbal, and sexual abuse, a family history of substance and sexual abuse, a long history of Brown's own substance abuse, and resulting feelings of inadequacy, emasculation, depression, and other deleterious emotional conditions. *See* ECF no. 29, at 14-62. Brown presented a somewhat similar ineffective assistance claim in his state habeas corpus application but argued in his state habeas proceeding that his trial counsel should have presented additional lay testimony and other evidence tending to show that Brown murdered Ray out of feelings of personal animus, that is, because Ray was planning to take their children with her when she moved to a different town to take a new job, and not in retaliation for Ray's reports to police or in an effort to obstruct Ray from reporting matters to police.

Brown now presents his ineffective assistance complaint as asserting that his trial counsel should have had Brown evaluated by a mental health expert or experts who then could have opined that Brown suffers from ASD and ADHD, as well as the deleterious effects of growing up in a highly dysfunctional, abusive, neglected family situation rife with drug, substance, and sexual abuse.

Many of the claims that Brown presents in his federal habeas corpus petition were fairly presented to the state appellate and state habeas courts but in a different context or format. For example, Brown presented the state habeas court with several complaints that his trial counsel rendered ineffective assistance by failing to object to allegedly improper prosecutorial jury argument.

-9-

In his federal habeas corpus petition, Brown presents a series of complaints about the same prosecutorial arguments but not in the context of ineffective assistance. Instead, he now argues the prosecutorial arguments in question violated not his Sixth Amendment right to the effective assistance of counsel but rather his constitutional rights under due process and Eighth Amendment principles.

In another of his state habeas claims, Brown argued that his trial counsel rendered ineffective assistance by failing to seek a change of venue for Brown's capital murder trial. Brown reiterates the same ineffective assistance argument in his federal habeas corpus petition but also alleges for the first time that the state trial court violated Brown's constitutional rights by failing to grant a change of venue sua sponte.

Respondent filed his Answer on May 7, 2021, arguing that Brown had procedurally defaulted on virtually all of his claims for federal habeas relief but also suggesting that all of Brown's claims, both the exhausted and unexhausted, lack merit. *See* ECF no. 40.

On July 26, 2021, Brown filed his Reply to Respondent's Answer (ECF no. 48), arguing that he was entitled to merits review of all of his unexhausted federal habeas claims, in part, because of the ineffective assistance of his state habeas counsel.

Brown filed a motion for stay and abeyance on August 20, 2021, *see* ECF no. 63, requesting a stay to permit him to return to state court and exhaust state review on his many "unexhausted" claims – specifically, his first, second, third, fourth, fifth, sixth, eighth, ninth, and eleventh claims for federal habeas relief. Respondent filed a

response in opposition, *see* ECF no. 67, and Brown filed a reply, again arguing that the alleged ineffectiveness of his state habeas counsel furnished good cause for a stay in this cause, *see* ECF no. 68.

## Legal Standards

A stay and abeyance to permit exhaustion of state court remedies on unexhausted claims for relief is appropriate in the context of a pending federal habeas corpus proceeding only when a district court determines that (1) there is good cause for a petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in abusive litigation tactics or intentional delay. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005); *Haynes v. Quarterman*, 526 F.3d 189, 196 (5th Cir. 2008).

## Analysis

I.   Delay

The first and last of the *Rhines* factors do not weigh in Brown's favor. With regard to the last of these considerations, Brown waited almost a year after he filed his original federal habeas corpus petition to request a stay to permit him to return to state court and exhaust state remedies on his allegedly unexhausted claims. The appropriate time to seek a stay and abeyance for unexhausted claims was when Brown's federal habeas counsel became aware of the need to assert his unexhausted claims – prior to or contemporaneous with the filing of Brown's original petition, not eleven months later after Respondent responded on the merits and Brown replied.

Because several of Brown's federal habeas claims lack arguable legal merit, as explained below, the second *Rhines* factor does not not favor Brown, and Respondent persuasively argues that Brown's motion for stay is at the least dilatory.

II.   <u>Lack of Good Cause for Failure to Exhaust</u>

Brown fails to establish good cause for his failure to develop his federal habeas claims in state court. Brown's state habeas counsel fairly presented eight claims in Brown's state habeas corpus application, several of which were deemed sufficiently worthy of merit to warrant an evidentiary hearing.  Brown presents this court with variations on many of those very same claims.

The United States Supreme Court and United States Court of Appeals for the Fifth Circuit have both made clear that, under the AEDPA, the proper place for development of the factual bases for federal habeas claims is the state courts. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding."); *Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding the AEDPA clearly places the burden on a federal habeas petitioner to raise and litigate as fully as possible his federal claims in state court).

Brown does not provide a rational, much less a convincing, explanation for his failure to exhaust state remedies on all his claims for federal habeas relief during his state habeas corpus proceeding.

That includes Brown's conclusory assertions of "ineffective assistance" by his state habeas counsel as a justification for his failure to develop the factual bases for many of his federal habeas claims in the state court. The Supreme Court has never recognized a federal constitutional right to the assistance of counsel during a state postconviction proceeding. *See Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017) ("Because a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default."); *Coleman v. Thompson.* 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state postconviction proceedings."); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (same).

Brown's reliance on the Supreme Court's holdings in *Martinez v. Ryan,* 556 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), is misplaced. Those decisions do not allow him to re-litigate as substantive constitutional claims many of the constitutional arguments that he presented to the state habeas court as ineffective assistance claims, such as his complaints of allegedly improper prosecutorial jury argument. The Supreme Court's holding in *Martinez v. Ryan* furnishes a narrow avenue for circumventing a procedural default but only for claims of ineffective assistance by trial counsel. The *Martinez/Trevino* exception to the procedural default doctrine requires a showing that the performance of a federal habeas petitioner's state postconviction counsel was so deficient as to preclude state court merits review of a meritorious claim of ineffective assistance by trial counsel, thus permitting a federal habeas court to undertake a merits review of the otherwise procedurally

-13-

defaulted complaint of ineffective assistance by state trial counsel. *See In re Edwards*, 865 F.3d 197, 207-08 (5th Cir.), *cert. denied*, 137 S. Ct. 909 (2017) (To show cause for procedural default under *Martinez* and *Trevino*, "the petitioner must show (1) that his claim of ineffective assistance of counsel at trial is 'substantial' (i.e., 'has some merit'); and (2) that his habeas counsel was ineffective for failing to present those claims in his first state habeas application." (quoting *Beatty v. Stephens*, 759 F.3d 455, 465-66 (5th Cir. 2014)); *Prystash v. Davis*, 854 F.3d 830, 836 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 649 (2018) (holding the Supreme Court's rulings in *Martinez* and *Trevino* created a narrow exception to the general rules of procedural default that applies only to a claim of ineffective assistance by state trial counsel); *Broadnax v. Davis*, 3:15-cv-1758-N, 2019 WL 3302840, at *19 n.27 (N.D. Tex. July 23, 2019) (holding the *Martinez/Trevino* exception only furnishes an avenue for federal habeas review of otherwise procedurally defaulted claims complaints of ineffective assistance by trial counsel), *aff'd* 987 F.3d 400 (5th Cir. 2021); *cert. denied*, 2022 WL 145177 (Jan. 18, 2022).

The Supreme Court has expressly declined to extend the holdings in *Martinez v. Ryan* and *Trevino v. Thaler* beyond the context of procedurally defaulted complaints of ineffective assistance by state trial counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2065-66 (2017) (declining to extend the holdings in *Martinez* and *Trevino* to a complaint of ineffective assistance by state appellate counsel and declaring that doing so would constitute an improper overruling of its prior opinion in *Coleman v. Thompson*); *Busby v. Davis*, 892 F.3d 735, 755-56 (5th Cir. 2018) (citing *Davila* and

declining to extend the holdings in *Martinez/Thaler* beyond the context of procedurally defaulted claims of ineffective assistance by state trial counsel).

And the holdings in *Martinez* and *Trevino* do not furnish a vehicle for obtaining de novo federal habeas review of constitutional claims that a federal habeas corpus petitioner litigated unsuccessfully in a state habeas corpus proceeding but now wishes to re-litigate using new evidence and different counsel. *See Broadnax*, 2019 WL 3302840, *19 n.27. Those two opinions also do not authorize a federal habeas petitioner who argued in his state habeas corpus proceeding that his state trial counsel rendered ineffective assistance by failing to object to allegedly improper prosecutorial jury argument (which argument the state habeas court concluded to be unobjectionable under applicable state and federal law) to obtain de novo review in a federal habeas court of otherwise unexhausted due process or Eighth Amendment claims attacking the propriety of the same prosecutorial jury argument. To hold otherwise would disregard the congressional intent underlying the Anti-Terrorism and Effective Death Penalty Act. *See Mayle v. Felix*, 545 U.S. 644, 662 (2005) (recognizing the AEDPA's objectives of encouraging finality and streamlining federal habeas proceedings render stay and abeyance available in only limited circumstances); *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) ("Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases."); *Hernandez v. Johnson,* 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding one purpose behind the AEDPA was to require federal habeas corpus

petitioners to identify and develop the factual bases for their federal constitutional claims to the extent possible in the state courts).

III.   Unexhausted Ineffective Assistance Claims Are Plainly Meritless

The two most significant unexhausted ineffective assistance claims asserted by Brown in his federal habeas petition both lack substance when viewed under the dual prongs of *Strickland*.

A.   Ineffective Assistance at Guilt-Innocence Phase

Brown's state habeas counsel presented an ineffective assistance claim to the state habeas court that was somewhat analogous to Brown's initial claim for federal habeas relief. During his state habeas proceeding, Brown argued that his trial counsel were ineffective because they should have presented additional lay testimony showing that "the real" reason Brown fatally shot Ray was because Brown was angry with Ray for taking his children from him, for not responding to his telephone calls, for allowing her other ex-husband Williams to move in with her, for not intervening when Williams allegedly choked Brown, and for allegedly pushing Brown's buttons. At trial, Brown gave testimony in support of this argument. Brown's trial counsel also presented another lay witness, Brown's sister, who testified about Ray's drug abuse and other lay witnesses who described Brown's anger at Ray for taking his children away from him.

Brown now argues that his state trial counsel should also have had Brown evaluated by a competent mental health professional who could have diagnosed Brown with ASD and ADHD and testified about the impact of those disorders, as well

as the difficult circumstances in which Brown grew up (including the impact of Brown being sexually molested as a child), on Brown's development and emotional state at the time of his capital offense. Brown argues that this expert testimony might have convinced the jury that, when he fatally shot Ray, Brown was acting exclusively out of anger and depression and decompensation rather than a conscious desire to retaliate or obstruct Ray, as those terms are defined by Texas criminal statutes. In other words, Brown argues that expert testimony could have convinced the jury that Brown lacked the *mens rea* necessary to commit a capital murder – specifically, a murder in the course of retaliation, obstruction, or terroristic threat – even if Brown clearly intended to kill Ray.

But this ineffective assistance claim conflates the concept of mitigating evidence with the type of evidence necessary under Texas law to establish a lack of sufficient *mens rea* to commit a capital offense. Texas law recognizes no "diminished capacity" defense except when evidence shows a defendant suffered from a mental disease or defect so severe as to rebut or disprove the culpable mental state for the offense. *See Ruffin v. State*, 270 S.W.3d 586, 593 (Tex. Crim. App. 2008) ("Insanity is the only 'diminished responsibility' or 'diminished capacity' defense to criminal responsibility in Texas."). Section 8.01(a) of the Texas Penal Code provides: "It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." *Battaglia v. State*, 537 S.W.3d 57, 61 n.3 (Tex. Crim. App. 2017), *cert. denied*, 138 S. Ct. 943 (2018). Brown alleges no facts showing that, at the time of his capital

offense, he met the Texas statutory definition of insanity. And he does not argue that he was unaware of the wrongfulness – that is, the illegality – of his fatally shooting Ray. His flight from police immediately thereafter and his admissions that he considered suicide shortly thereafter would also belie any rational conclusion to the contrary. Under Texas law, evidence of flight evinces a consciousness of guilt. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007); *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994).

The TCCA has explained the type of evidence necessary to establish that an otherwise sane criminal defendant lacked the necessary *mens rea* to commit an offense as follows:

> The Texas Legislature has not enacted any affirmative defenses, other than insanity, based on mental disease, defect, or abnormality. Thus, they do not exist in Texas.
> But both physical and mental diseases or defects may affect a person's perception of the world just as much as they may affect his rational understanding of his conduct or his capacity to make moral judgments. For example, suppose that a blind person is sitting on his front porch and hears what he thinks is a trespasser coming up his walk. He shoots at the person to scare him away, knowing that it is illegal to shoot at people, even trespassers. The "trespasser" turns out to be a uniformed police officer who is coming to serve a subpoena. The blind man may be prosecuted for aggravated assault with a deadly weapon, but he cannot be convicted of aggravated assault of a police officer if, because of his blindness, he did not see the uniform and did not know the person was a police officer. Evidence of the defendant's blindness would, of course, be relevant and admissible to rebut the State's assertion that the defendant intended to shoot at a police officer. Such evidence might be elicited from the defendant, a lay witness – mother, brother, friend, or neighbor – or from an expert, an optometrist, physician, etc. Courts routinely admit evidence of a physical abnormality offered to prove a lack of *mens rea*.
> In Texas, the same rule applies to evidence of a mental disease or defect offered to rebut or disprove the defendant's culpable *mens rea*. If, instead of blindness, the defendant suffers from mental delusions such

that he sees a "trespasser" or a "Muslim" when everyone else around him sees a police officer, he cannot be convicted of intentionally shooting at a police officer, although he may be convicted of intentionally shooting at a trespasser or Muslim. Guilt of the greater offense requires that the State prove, beyond a reasonable doubt, that the defendant intended to shoot a police officer, not a trespasser or Muslim. That is the required *mens rea* and that is the State's constitutional burden of proof.

*Ruffin*, 270 S.W.3d at 593-94 (footnotes omitted).

Brown alleges no facts showing that, at the time that he fatally shot Ray, he suffered from any mental disease or defect, such as a delusion, psychosis, or hallucination, which interfered with his ability to accurately perceive reality. Brown does not argue that, at the time that he fired the fatal shotgun blast, he confused Ray for anyone or anything else. Nor does he allege that he was then suffering from any mental disease of defect that prevented him from appreciating the fact that Ray had previously reported him to police (for being suicidal) and that that report directly led to Brown's loss of his sawed-off shotgun. Brown also does not allege that he suffered from any mental disease of defect that prevented him from perceiving that Ray was communicating with police on her phone at the time that he pursued her, forced her off the road, and then fatally shot her.

To the contrary, Brown admitted during his trial testimony, and in several other post-arrest statements that were admitted into evidence, that he knew that Ray was communicating with police and that he was aware of the arrival of a police officer on the scene at the time that he fired the fatal shot. Nothing in the proposed evidence of Brown's alleged ASD, ADHD, or difficult, abused, neglected childhood that Brown now argues should have been presented at the guilt-innocence phase of his capital

murder trial would have been sufficient under applicable Texas law to negate the *mens rea* necessary to show Brown committed Ray's murder in the course of committing or attempting to commit the offense of retaliation or obstruction. Brown identifies no expert opinion or other new evidence sufficient to establish that Brown was mentally incapable of perceiving or comprehending that (1) Ray's murder was wrongful or (2) Ray had made reports to law enforcement about Brown and was in contact with law enforcement at the very time Brown fired the fatal shot.

In its opinion affirming Brown's conviction and sentence on direct appeal, the TCCA chose not to address the sufficiency of the evidence supporting a finding of guilt that Brown committed an intentional murder. But an independent review of the evidence from Brown's trial showing that he committed Ray's murder while in the course of committing or attempting to commit the offense of terroristic threat reveals that that evidence was even more compelling than the evidence described in detail above by the TCCA in connection with the prosecution's retaliation/obstruction theories of capital murder.

More specifically, Texas law provides that a person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to place any person in fear of imminent serious bodily injury. *See* TEX. PENAL CODE § 22.07(a)(2). Under Texas law, intent or knowledge can be inferred from the conduct of, remarks by, and circumstances surrounding the acts engaged in by an accused. *See Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980). The State is not required to prove an admission by the defendant as to his own specific intent

before he can be convicted of a terroristic threat – it may be inferred from the defendant's acts, words, or conduct. *Phillips v. State*, 401 S.W.3d 282, 293 (Tex. App. – San Antonio 2013, *Pet. ref'd*); *Williams v. State*, 194 S.W.3d 568, 575 (Tex. App. – Houston [14th Dist.] 2006), *Aff'd*, 252 S.W.3d 568, 575 (Tex. Crim. App. 2008).

Brown admitted during his trial testimony and in multiple post-arrest statements that he pursued Ray's vehicle in his own vehicle, flashed his lights at her, pulled up beside her, and shouted at her. The 911 dispatcher testified that she heard Brown yelling at Ray. Brown's voice could be heard on the recording of that call. Brown admitted to others following his arrest that he forced Ray's vehicle to the curb, shouted at her, and pointed his shotgun at her head. He insisted at trial that he wanted to know where his children were and was upset that Ray would not tell him. Ray telephoned police to report Brown's behavior and her fear that he was going to strike her vehicle with his own.

Brown identifies no evidence in his first claim for federal habeas relief that would have established that it was impossible for Brown to form the specific intent to cause Ray to fear her own imminent serious bodily injury. Brown does not allege that he was suffering from a mental disease of defect or other mental condition that caused him to experience an erroneous perception of reality at the time that he engaged in the testified-to conduct.

Brown's proposed new evidence (of ASD, ADHD, and Brown's difficult childhood) would not have furnished a defense at the guilt-innocence phase of trial to

the theory of capital murder premised on an intentional murder committed in the course of the commission or an attempt to commit terroristic threat.

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of <u>trial</u> counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland* – to establish that his counsel's performance was constitutionally deficient – a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). The convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687-91. Courts are very deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. *See Wiggins*, 539 U.S. at 523 (holding the proper analysis under the first prong of *Strickland* is an objective review of the reasonableness of counsel's performance under prevailing professional norms, which

includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009); *Strickland*, 466 U.S. at 688-89. Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *See Strickland*, 466 U.S. at 694.

Brown's trial counsel presented evidence and argued to the jury at the guilt-innocence phase of trial that Brown simply "snapped" because Ray was about to take away his children, which was something that Brown claimed that he could not bear emotionally; that Brown felt humiliated when Williams assaulted him; and that Brown was taking drugs and consuming alcohol at the time of his offense. In Texas, evidence of voluntary intoxication does not constitute a defense to the commission of a crime. *See Thomas v. Lumpkin*, 995 F.3d 432, 452 (5th Cir. 2021). Likewise, "new"

evidence showing Ray was a prolific drug abuser and had introduced Brown to hard narcotics would not have furnished a defense to Brown's capital murder charge nor negated the *mens rea* necessary to establish capital murder. Despite his alleged ingestion of drugs and alcohol, by his own admission Brown managed to navigate his own vehicle sufficiently well to catch up with Ray's vehicle, pin her vehicle against the curb, and then speed off after he shot Ray. Brown's new evidence does not furnish a rational basis for a jury finding that Brown was incapable of forming the requisite specific intent to commit capital murder under any of the theories charged.

Brown's first claim for federal habeas relief does not satisfy the prejudice prong of *Strickland*. There is no reasonable probability, that, but for the failure of his trial counsel to present any of the new expert mental health testimony or the other "new" evidence identified by Brown in his first claim for federal habeas relief, the outcome of the guilt-innocence phase of Brown's capital murder trial would have been any different. Brown's new evidence does establish the absence of an intentional murder committed in the course of committing or attempting to commit the offenses of retaliation or obstruction or terroristic threat. Mental health experts would have had been no better positioned than the witnesses Brown's trial counsel did call to testify at the guilt-innocence phase of trial about Brown's motives for shooting Ray. To convict Brown of intentional murder (an offense to which Brown admitted) but acquit him of capital murder, his jury would have been required to completely disregard the undisputed evidence showing the escalating level of violence between Brown, Ray, and Williams in the days leading up to the fatal shooting (including Ray's multiple

reports to police about Brown's suicidal ideation and acts of violence), as well as the circumstances of the offense itself (in which Brown terrorized Ray before shooting her while he knew that she was in telephone contact with police). No rational jury could have done so.

B. *Wiggins* Claim

Brown fairly presented the state habeas court with a claim that his trial counsel rendered ineffective assistance by failing to adequately investigate Brown's background and present all available mitigating evidence. After a lengthy evidentiary hearing in which both of Brown's trial counsel testified about the reasons underlying their trial strategy, the state habeas court denied relief on the merits.

Under these circumstances, Brown is not entitled to a stay of this federal habeas corpus proceeding to permit him to return to state court and re-litigate a similar ineffective assistance claim that identifies even more "new" mitigating evidence that Brown alleges should have been presented to the jury. As explained above, the Supreme Court's *Martinez/Trevino* decisions furnishes an exception to the procedural default doctrine when state habeas counsel's deficient performance prevented the presentation of a claim of ineffective assistance by trial counsel. It does not authorize a return to state court to re-litigate claims that were disposed of on the merits while employing new evidence.

Brown fully litigated his *Wiggins* claim once and is not entitled to do so once more simply because he has discovered even more allegedly new mitigating evidence. The possibility that Brown's trial counsel could have done more to investigate

Brown's background, standing alone, does not satisfy the initial prong of *Strickland*. *See Thomas v. Lumpkin*, 995 F.3d 432, 454 (5th Cir. 2021) ("Our concern is not whether counsel at trial could have done more. This is often, maybe always, the case."), *cert. filed*, Sept. 22, 2021 (no. 21-444).

The proper question for this Court is whether the scope of the investigation undertaken by Brown's trial counsel for mitigating evidence was itself objectively reasonable given the information furnished by Brown, his family, and the defense's retained mental health experts. Brown does not identify any opinions expressed by the defense team's mental health experts suggesting that Brown should be tested for ASD or ADHD or urging that inquiry into either condition could potentially furnish mitigating evidence. Insofar as Brown now faults his trial counsel for failing to investigate whether Brown suffers from ASD and ADHD, Brown fails to identify any information suggesting that the defense's mental health experts ever diagnosed Brown with those disorders or suggested to Brown's trial attorneys that further investigation into such possible disorders was appropriate in Brown's case.

Brown's trial counsel cannot reasonably be faulted for failing to pursue lines of investigation that were not suggested by the defense team's mental health experts. Brown does not identify any authority suggesting that it was objectively unreasonable for his trial counsel to fail to diagnose complex mental health disorders such as ASD and ADHD that were not called to their attention by the defense team's own mental health experts.

And most of the allegedly "new" mitigating evidence about Brown's family background identified by Brown in his second claim for federal habeas relief is duplicative or cumulative of the extensive case in mitigation Brown's trial counsel presented at trial, which included Brown's own testimony during the guilt-innocence phase of trial and the testimony of the defense's two mental health experts. The TCCA noted in its opinion affirming Brown's conviction and sentence that Brown's mitigating evidence at trial advised the jury about Brown's sexual molestation as a child, Brown's long history of substance abuse, his dysfunctional family life, his suicidal ideation, and his family history of substance abuse, sexual abuse, depression, and anxiety. *See Brown*, 2015 WL 5453765, *6. A failure to present cumulative testimony cannot be the basis of a claim of ineffective assistance. *See Howard v. Davis*, 959 F.3d 168, 173 (5th Cir. 2020) (citing *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009)); *Norman v. Stephens*, 817 F.3d 226, 233 (5th Cir. 2016) (defendant was not prejudiced by failure of counsel to present cumulative evidence).

As the TCCA pointed out in its opinion affirming Brown's conviction and sentence, the State's evidence established that Brown engaged in an escalating pattern of violence leading up to Ray's murder, and Brown made numerous post-arrest statements declaring that he was not remorseful for Ray's death. *See Brown*, 2015 WL 5453765, *8-*9. At trial, Brown admitted that he still blamed Ray for causing him to become angry enough to kill her. And the state presented evidence showing that Brown placed multiple calls and messages after the fatal shooting taunting Ray's friends and relatives and expressing his intent to harm Tracy

Williams and others. While in jail, Brown also wrote a letter to another inmate expressing his lack of remorse for Ray's murder and his desire to kill Tracy Williams.

Brown now argues that his ASD and ADHD render him less capable than others of expressing his emotions verbally in a nuanced manner. But Brown's communications following Ray's murder and following his arrest effectively expressed his continuing anger toward Ray and his lingering animosity toward Williams, as well as his lack of remorse for his capital offense.

Under these circumstances, there is no reasonable probability that, but for the failure of Brown's trial counsel to present the "new" mitigating evidence of ASD, ADHD, and additional details of Brown's difficult childhood, the outcome of the punishment phase of Brown's capital murder trial would have been any different.

C. <u>Conflict of Interest Claim</u>

Brown's unexhausted conflict of interest claim plainly lacks merit. His reliance on the Supreme Court's presumed prejudice rule in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), is misplaced. In this Circuit, *Cuyler's* presumption of prejudice rule applies only in the context of allegations of a conflict of interest arising from multiple representation and, even then, requires a showing an actual conflict of interest which adversely affected the performance of counsel. *See Strickland*, 466 U.S. at 692; *Cuyler*, 446 U.S. at 348; *Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1995).

Brown does not allege any facts showing that either of his trial counsel were engaged in a multiple representation scenario at the time they represented Brown.

D. <u>Failure of Trial Court to Change Venue Sua Sponte</u>

Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding that a federal court may not issue the writ on the basis of a perceived error of state law). In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle*, 502 U.S. at 67-68; *Lewis v. Jeffers*, 497 U.S. at 780; *Pulley v. Harris*, 465 U.S. at 41.

> When a federal district court reviews a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*.

*Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

Federal trial courts are expressly authorized by the Federal Rules of Civil Procedure to issue a change of venue sua sponte. Brown does not identify any legal authority recognizing the existence of a criminal defendant's federal constitutional right to receive a change of venue *sua sponte* from a state trial court. Nor has this court's independent research located any such authority.

## Improper Prosecutorial Jury Argument

Insofar as the state habeas court ruled on the merits of Brown's ineffective assistance claims arguing that his trial counsel should have objected to various aspects of the prosecution's closing jury arguments, the findings of fact and conclusions of law issued by the state habeas trial court in connection with those ineffective assistance claims and adopted by the TCCA are entitled to deference under the AEDPA. A stay is unnecessary to resolve Brown's exhausted complaints about allegedly improper jury argument. Insofar as Brown identifies any additional prosecutorial arguments which he now claims were objectionable, the Supreme Court's *Martinez/Trevino* decisions are inapplicable for the reasons discussed above.

### Challenges to Texas Capital Sentencing Statute and Special Issues

Brown's challenges to the absence of definitions of key terms in the Texas capital sentencing scheme's future dangerousness special issue, the Texas statutory definition of mitigating evidence or mitigating circumstances, and the absence of a provision in Texas law required a jury instruction advising a capital sentencing jury of the effect of a less than unanimous verdict or of a single "holdout juror" are all legally frivolous. *See Williams v. Lumpkin*, 339 F.R.D. 383, 387-90 (N.D. Tex. 2021) (explaining that the Fifth Circuit has repeatedly rejected the same constitutional challenges to the Texas capital sentencing statute and its special issues raised by Brown, as well as his complaint about the lack of a jury instruction informing the jury of the effect of a single holdout juror at the punishment phase of trial); *Holberg v. Davis*, 2:15-CV-285, 2021 WL 3603347, *38-*54 (N.D. Tex. Aug. 13, 2021) (the same); *Broadnax v. Davis*, 3:15-CV-1758, 2019 WL 3302840, *9-*13 (N.D. Tex. July

23, 2019) (the same), *Aff'd*, 987 F.3d 400 (5th Cir. 2021), *cert. denied*, 2022 WL 145177 (Jan. 18, 2022).

### Uncounseled Media Interviews

Brown's unexhausted complaints about the admission of his interviews with news reporters and television reporters are unsupported by any specific factual allegations showing any of those interviewers operated as agents for the State. Thus, the claim lacks arguable merit. *Broadnax v. Lumpkin*, 987 F.3d 400, 414-15 (5th Cir. 2021).

### Lack of Proportionality Review of Capital Sentences

Brown's complaint about an alleged lack of proportionality review of his death sentence by the state appellate court does not invoke any federal constitutional right and, therefore, is frivolous. *See Pulley v. Harris*, 465 U.S. 37, 44-53 (1984) (holding comparative proportionality review of capital sentences is not constitutionally mandated).

### Cumulative Impact

"Meritless claims or claims that are not prejudicial [or claims that are procedurally barred] cannot be cumulated." *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005) (quoting *Westley v. Johnson*, 83 F.3d 716, 726 (5th Cir. 1996)). "Twenty times zero equals zero." *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) (quoting *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987)).

Brown's unexhausted claims present nothing to cumulate.

### Conclusions

Brown has failed to satisfy the standard for obtaining a stay of this proceeding to permit him to return to state court and litigate his unexhausted claims. His motion for stay was untimely. He has failed to establish good cause for his failure to exhaust state remedies on his unexhausted claims. Brown's state habeas counsel identified and fairly presented a host of claims to the state habeas court, including five ineffective assistance of trial counsel claims. Those claims were not so lacking in arguable merit as to be worthy of summary dismissal. The state habeas court held an extensive evidentiary hearing before denying state habeas relief. And Brown presents this Court with almost all of the same claims that his state habeas counsel presented to the state habeas court, albeit in slightly different context. Brown fails to allege specific facts showing that the performance of is state habeas counsel was objectively unreasonable.

Most of the truly unexhausted claims in Brown's federal habeas corpus petition border on the frivolous. For instance, Brown's unexhausted initial claim for federal habeas relief conflates mitigating evidence with the type of evidence necessary under Texas law to negate the *mens rea* for Brown's capital offense. And the evidence supporting the jury's guilty verdict in Brown's case was sufficient if not overwhelming. Brown's unexhausted claims are all plainly lacking in merit.

### RECOMMENDATION

For these reasons, the Court should deny Brown's motion for stay and abeyance [ECF no. 63].

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: January 28, 2022

                    _____
                    DAVID L. HORAN
                    UNITED STATES MAGISTRATE JUDGE